# OVERBY *v.* GORDON.

PRACTICE; RIGHT TO OPEN AND CLOSE TO JURY; WILLS; DOMICIL
OF DECEDENTS; JURISDICTION; COMITY; PROBATE; CONFLICT
OF LAWS; EVIDENCE; ESTOPPEL.

1. The ruling of a trial court as to which party shall open and close
to the jury is upon a matter of practice and is not appealable.
2. Upon the trial of issues from the Orphans' Court to determine
whether a decedent whose will is offered for probate was a resi-
dent or non-resident of this District at the time of his death the
burden of proof is on the caveatee who propounds the will
and not upon the caveators who allege non-residence, and the
caveatee has the right to open and close to the jury.
3. Where, upon a caveat being filed alleging that a decedent whose
will is offered for probate, was not, as.alleged in the petition
for probate, a resident of this District, but a resident of
Georgia, issues to determine the domicil are certified for trial
by jury; and pending such trial, the caveators, without the
knowledge of the caveatee, obtain a grant of administration
upon the decedent's estate in Georgia upon the ground that
the decedent was domiciled there, and remove the assets of the
estate from this District, where they were located at the time
of the decedent's death and the filing of the petition for pro-
bate here, to that jurisdiction, the judgment of the Georgia
court is not admissible in evidence on the trial here, as tending
to show that the decedent was a resident of Georgia at the
time of his death, or as an estoppel upon the caveatee to deny
that fact; Mr. Chief Justice ALVEY *dissenting.*

No. 809. Submitted October 4, 1898. Decided November 2, 1898.

HEARING on an appeal by the caveators from an order of
the Orphans' Court admitting a will to probate, after trial
by jury of issues framed upon a caveat. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of
the District of Columbia, holding a special term of that
court for Orphans' Court business, whereby a certain paper-
writing was therein admitted to probate as the last will

and testament of one Hugh A. Haralson, deceased, and let-
ters of administration with the will annexed, there having
been no executor named therein, were ordered to be issued
to Hugh H. Gordon.

It appears from the record that Hugh A. Haralson, a citi-
zen of the State of Georgia, but claimed by the appellee to
have been at the time of his death a resident of the District
of Columbia, died on August 23, 1895, at Kirkwood, De
Kalb County, in the State of Georgia, where he was staying
temporarily as an official in the service of the United States;
and that on August 14, 1895, nine days before his death, he
had executed an instrument of writing purporting to be his
last will and testament, by the terms of which he bequeathed
to his sister, Mrs. Fannie H. Gordon, the appellee in this
case, for life, and after her death to her daughter, Carrie
Lewis Gordon, his neice, the interest on his bonds, which
are not otherwise described or identified in the writing, with
remainder over to his heirs-at-law in the event that Carrie
Lewis Gordon should have no children at her death. This
paper-writing was attested by only one witness; while it ap-
pears that to make a testamentary paper effective as a will,
either of real or personal property, in the State of Georgia two
attesting witnesses are required, although in the District of
Columbia, as the law now stands, it is not required that any
witness should attach his signature to the paper to give it
validity as a disposition of personal property. And it is
this difference in the laws of the State of Georgia and of the
District of Columbia that has given rise to the present con-
troversy. The appellants claim that Hugh A. Haralson,
the deceased, was, at the time of his death, a resident of the
State of Georgia, and that he died intestate; and on the
other hand, the appellee contends that the deceased, at the
time of his death, although a citizen of Georgia, was a resi-
dent of the District of Columbia, and that the will was
valid here.

The bonds referred to in the paper, which were of the

value of about $9,000, were, at the time of Haralson's death, on deposit with two banking institutions in this city of Washington; and they constituted almost the whole estate left by the deceased, the residue of the estate amounting only to about $200. Where this residue was situated, or whether it was realty or personalty, does not appear. Only the fact appears that it was situated outside of the District of Columbia.

The will was filed in the office of the Register of Wills for this District; and on January 23, 1896, Mrs. Fannie H. Gordon, the legatee for life named in it, filed her petition in the Supreme Court of the District, holding a special term. for Orphans' Court business, praying for its admission to probate, and the granting of letters of administration therewith to her son, Hugh H. Gordon, a resident of this District. Upon this petition a citation was issued to the next of kin to appear and show cause, if any they had, why the prayer of the petition should not be granted; and in pursuance of this citation, the appellants, who, with the appellee, constitute the next of kin of the deceased, appeared and filed a caveat to the alleged will, and averred that the paper-writing in question was not the last will and testament of the deceased, and that at the time of his death Hugh A. Haralson was a resident of the State of Georgia, and not of the District of Columbia, and that therefore the alleged will was of no validity in law.

Issues were thereupon framed between the parties, and on April 10, 1896, an order was made transmitting these issues to the Circuit Court branch of the Supreme Court of the District, for trial by jury according to law. The issues were five in number, and were as follows:

"1. Was the said deceased at the time of his death a resident of the District of Columbia?

"2. Was the said deceased at the time of his death a citizen and resident of the State of Georgia?

"3. Was the said deceased at the time of the making of

the paper-writing purporting to be his last will and testament, a resident of the District of Columbia?

"4. Was the said deceased at the time of the making of the paper-writing purporting to be his last will and testament, a citizen and resident of the State of Georgia?

"5. At the time of his death did any considerable part of the personal estate of the said deceased lie within the District of Columbia?"

After an unexplained delay of nearly two years, trial of these issues was had; and on February 10, 1898, the jury rendered its verdict, wherein the first, third and fifth issues were answered in the affirmative, and the second and fourth in the negative; that is, the jury found that the deceased, Hugh A. Haralson, both at the time of the making of the alleged will and at the time of his death, was a resident of the District of Columbia and not of the State of Georgia; and that at the time of his death there was a considerable part of his personal estate lying within the District of Columbia.

The findings of the jury upon the issues were duly certified to the special term of the court; and that court then directed proof to be taken of the execution of the will. This was done by the taking of the deposition of the subscribing witness. Upon the return of this deposition, the court rendered an order admitting the paper-writing to probate and record as the last will and testament of Hugh A. Haralson, and directing the issue to Hugh H. Gordon of letters of administration upon his estate with the will annexed; and from this order the caveators have appealed, in pursuance of exceptions taken by them to rulings of the trial court at the trial of the issues before the jury.

There were two of these exceptions. The first of them was to the ruling of the court upon the alignment, as it is called, of the parties at the trial, the position of plaintiff, with the right to open and close the case, having been assigned to the caveatee, and the position of defendants to the cavea-

tors.    Upon this ruling the first assignment of error by the appellants is based.

A second assignment of error, and that principally relied upon by the appellants, is founded upon a ruling of the trial court whereby certain record testimony offered in evidence by the caveators was excluded from consideration by the jury.    This excluded testimony consisted of the record of certain proceedings had in the court of the Ordinary, which is the court of probate, of De Kalb County, in the State of Georgia, in the months of April and May, 1896.

It appeared that, on April 6, 1896, one month after the appellants had filed their caveat in this District, and four days only before the order was made for the transmission of the issues joined between the parties to be tried before the jury, Logan Bleckley, one of the caveators, and one of the appellants here, had filed a petition in the court of the Ordinary in De Kalb County, in the State of Georgia, wherein he had stated that Hugh A. Haralson had died in that county on August 23, 1895, a resident of the county and intestate, leaving an estate of real and personal property of the probable value of about $10,000, and asked that he, as one of the next of kin, should be appointed administrator of the estate.    No mention was made of the alleged will, or of the proceedings pending in the District of Columbia, or of the controversy between the parties as to the place of residence of the deceased and the validity of the will, or of the *situs* or character of the property; nor was it mentioned who were the next of kin.    Upon the petition the Ordinary ordered a citation to issue "according to law;" but what publication of it was made we are not advised by the record. We understand, however, from the statements of counsel in their arguments, that the citation was published in some newspaper of limited circulation; and it seems to be conceded that the appellee in this case had no notice or knowledge whatever of it or of any of the proceedings in the court of

the Ordinary; and all the proceedings evidently were *ex parte* proceedings. Thereupon, and on or before May 4, 1896, and within one month after the filing of the petition, the Ordinary made an order, reciting the filing of the petition, and the issue and publication thereof according to law, and also that it appeared that the deceased had died a resident of the county and intestate, and that the applicant was duly qualified for the administration of his estate, and thereupon directing that letters of administration be issued to him, no objection having been offered thereto.

At the trial of the issues in the Supreme Court of this District, after the appellee as plaintiff had adduced her *prima facie* proof in support of her side of the issues, and had also proved that, subsequently to the date of his appointment as administrator in Georgia, the appellant, Logan Bleckley, under his claim as such administrator, had removed the bonds left by the deceased from this District, the appellants, to sustain their side of the issues, offered in evidence the record, duly authenticated, of the proceedings had in the court of the Ordinary in Georgia, as we have here stated them; and they neither adduced nor offered to adduce any other testimony. This record was offered in evidence "as tending to show that the said Hugh A. Haralson had died a resident of said county (of De Kalb) intestate, and that said caveatee was thereby estopped to deny that fact." But the trial court refused to admit it; and the caveators excepted. And this is the basis for the second assignment of error.

*Mr. S. F. Phillips* and *Mr. Fred. D. McKenney* for the appellants:

1. The alignment of the parties violated a rule laid down in a series of familiar cases in a neighboring State, the decisions of whose courts upon such and other matters are received with special and deserved deference in this Dis-

trict, as follows: *Townshend* v. *Burke,* 7 Gill, 10; *Edelen* v. *Edelen,* 6 Md. 288; *Higgins* v. *Carlton,* 28 Md. 115; *Stockdale* v. *Cullison,* 35 Md. 322.

The record in this case shows that the burden of the contention as to residence, involving as this did substantially the respective jurisdiction of the court of Ordinary and the Orphans' Court—lay upon the caveators. "Alignment" turns upon the substantial, not technical, burden involved in any particular case. The record contains no suggestion that the decedent owed debts within this District, or indeed anywhere, and the incident that no movement was made during the two and a half years which elapsed betwixt the death and the order for probate for some *pendente lite* administration, is to the same effect. Substantially the caveat was upon its face, and understood to be, a clean-cut contention as to the jurisdiction that should be given the distribution of property; *i. e.,* whether that of Georgia, which would make an intestacy—and distribution betwixt all of the next of kin; or that of the District of Columbia, in which the will and bequests therein would be valid. Attacks upon jurisdiction, whether of special tribunals in possession of a case or of the whole judiciary system of the sovereignty in which the question is raised, must, by first principles, be attended by a burden upon the questioner. See *Sheppard* v. *Graves,* 14 How. 505.

2. The learned court below erred in excluding the record of the court of Ordinary of De Kalb County, Georgia. Courts of Ordinary in Georgia are courts of *general* jurisdiction—as the Supreme Court of the United States has already had occasion to notice in *Veach* v. *Rice,* 131 U. S. 314. In that connection we also cite the following cases: *Stewart* v. *Golden,* 98 Ga. 479; *Arnold* v. *Arnold,* 62 Ga. 627; *Taut* v. *Wright,* 65 Ga. 412. See, also, *Railroad Co.* v. *Gorman,* 7 App. D. C. 91. These cases hold that when findings preliminary and necessary to some appointment of an administrator come before another court merely as

incidents to the latter, *i. e.,* the *res*—the validity of the latter being the real question before the second court—such findings are as unassailable as the appointment to which they were essential.    And this is true although the proceedings for the appointment were *ex parte.*  ·But . it is plain that where the proceedings for the appointment were *inter partes,* an. additional element of conclusiveness may be incident to subsequent questionings of the validity of such proceedings; an element operating upon parties thereto in a manner. differing from that in which they apply to other persons, and. concluding such parties as to essential findings even where the value of the .latter as evidence is the important matter—not the mere *res* or appointment itself—in. some future suit betwixt the same parties.    This last is the state of the case now before the court.

The question presented by the second assignment of error is as to the operation under the details of the record, of the familiar "faith and credit" rule of the Constitution and Revised Statutes, Section 905, within the courts of this District upon a record .of judicial proceedings in a court of general jurisdiction in Georgia.  *Henley* v. *Donohue,* 116 U. S. 1. We will notice first, certain detached points in the record, some of which affect this case, without concerning the general theory of estoppel herein presented.  ·

(1) The parties in the two cases here are the same, viz.,  · the next of kin of the decedent; and these have appeared personally in the pending case; but in the Georgia case, excepting the petitioner, of course, were brought in ·by publica- · tion under a statute.

(2) In this connection it will be noticed that all of the next of kin but one caveator are residents of Georgia, and therefore bound by its statutory provisions for constructive service, so that the judgment rendered against the caveatee in conformity with that statute (and also findings) are to be deemed by other courts within the United States to have been rendered with jurisdiction as to her.  *Grover* v. *Rad-*

*cliffe*, 137 U. S. 287; *Knowles* v. *Gas Light Co.*, 19 Wall. 16; Wharton, Conflict Laws, Sec. 708; Story, Conflict Laws, p. 809, Bigelow's note *b;* 2 Black, Judgments, Sec. 836; 1 Duvall (Ky.), 329: S. C., 38 Am. Dec. 629.

(3) Nor is the circumstance here that the finding was made in a suit which was begun pending the one in which this is invoked a matter of objection to its introduction. This is so even where the judgment itself is invoked. 1 Chitty, Pl., 689, note *n;* 1 Taunton, 333; 2 Black, Judgments, Sec. 791; *Emery* v. *Fowler*, 39 Me. 326; 63 Amer. Dec. 326. Much more so when it is an admission therein made by a party to the pending suit, that is offered. A party is free to give away a right of action by admissions, direct or indirect, at any time before judgment. Whether these are *in pais*, or are imputed to certain inaction, for reasons of general policy, can make no difference betwixt the two classes of admissions. The order *in rem*—or appointment—by the ordinary at "May term, 1896," was effective only at, and after, that date—whereas the admission by the "persons concerned" (including the present appellee), operated retrospectively—*i. e.*, upon a state of things which existed August 23, 1895—the incidental finding therefore merely copying the scope of the admissions, its date of course being immaterial. The case of *Railroad Co.* v. *United States*, 168 U. S. 1, recognizes the distinction betwixt the effect of simple estoppel by judgment, and of conclusion by findings as evidence, which, as we submit, bears out this contention.

(4) The mere application for action *in rem* in Georgia was no violation of courtesy, and no contempt of the courts of this District. For, a District administrator *cum testamento annexo*, supposing this will admitted to probate, would have had no authority in Georgia even in the absence of the above-mentioned application. And if such application were innocent in itself, certainly the allegations in support of it could in reason be limited only by the candor of the applicant. The fact that he had openly asserted such residence—by

caveat previously filed in the Orphans' Court, and by deliberate challenge given to the other next of kin (in the court of Ordinary of the very county in which the caveatee was then and had long been resident)—to disprove such allegations—seems to be irreconcilable with concealment, or with contempt, technical or other; and equally so with want of comity in the court which entertained the application, and pursued the even way of the law in making the finding in question.

(5) The last of these minor points arises out of the circumstance that the order in the Georgia court to which this finding was incident was limited by the bounds of that State—*i. e.*, was for the appointment of an administrator, which may occasion a suggestion that the finding had no further operation. It is submitted that the principles already noticed as dividing the operation of findings from that of judgment, indicate that the above question should be answered in the affirmative. But it has in effect been so decided, and argument is therefore needless. *Dobson* v. *Pearce*, 12 N. Y. 156; quoted with approval in *Embry* v. *Palmer*, 107 U. S. 3, 12.

In the *Gorman Case*, 7 App. D. C. 91, the North Carolina probate court proceedings were *ex parte*, whilst here the Georgia proceedings were *inter partes*. *Ex parte* proceedings *in rem* bind the whole world as to such *res*—*ex gr.*: The appointment of an administrator can not be collaterally impeached, within the limits of the commission given to him, whether directly or indirectly. The findings in that connection are as sacred as the judgment itself, when it is the latter that is the real object of the collateral attack. But it is otherwise when it is the finding that is the chief matter collaterally in question. Except to protect the judgment, the findings, if *ex parte*, bind no one. But findings *inter partes* are conclusive betwixt the parties whenever the matter found is afterwards questioned in judicial proceedings— questioned, that is, irrespectively of the matter adjudged.

Such is the present case.   The rule of law is familiar; but where findings occur in the course of proceedings *in rem* attention may be required to notice the distinction as to the operation of an estoppel *in rem* affecting the whole world, and of estoppel *inter partes* affecting only parties as between one another—the former also applying only to the very *res* itself or to incidents thereto when treated substantially *in solido* therewith, whilst the latter applies not only where estoppel *in rem* does, but also upon the matter of the findings when these are the very subjects in dispute.

The late case of *Railway Co.* v. *United States*, 168 U. S. 1, is interesting here as having restated with force and clearness judgments given by the Supreme Court from time to time for seventy-five years upon questions of estoppel.   Fifteen such cases are briefly analyzed, and their conclusions and general trend exhibited; and the rule is stated to be, "that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must as between the same parties or their privies be taken as conclusively established so long as the judgment in the first suit remains unmodified."   Of the "fifteen" cases referred to by the court as above, several, including *Hopkins* v. *Lee*, had held that the suit in which the finding was made need not have been upon the same cause of action as that in which such finding was invoked; others, including *Smith* v. *Kernochen*—that if the former proceedings be not pleaded, but only introduced in evidence, they are nevertheless conclusive of the matter found in them; whilst the case, *Last Chance Co.* v. *Tyler Co.*, 157 U. S. 683, is quoted for the rule that "the judgment by default is just as conclusive an adjudication between the parties of what is essential to support that judgment as one rendered after answer and contest."   The case of *Railroad*

·Co. v. *United States, supra,* also settles a matter much disputed .in the reports, as to the weight to be allowed former judgments when given in evidence without having been pleaded. They are held to be conclusive (pp. 59, 60).

We come now to two cases which, if the minor points in the present have been well met herein, appear fully to sustain the general contention of the appellants. *Caujolle* v. ·*Ferrié,* 13 Wall. 465, and *Blackburn* v. *Crawford,* 3 Wall. 175. In the former, a finding in a State probate court upon an application for administration *inter partes,* was held to estop the same parties in a subsequent proceeding concerning the same general matter, viz., succession, before a court of the United States. *Blackburn* v. *Crawford,* 3 Wall. 175, was a case of ejectment, brought in the United States Circuit Court for Maryland by the Crawfords, as heirs, etc., and one defense was that they were not legitimate. Upon this point the defendant offered a record of a Maryland orphans' court in the contest for administration of the estate of the ancestor, betwixt himself and one of the plaintiffs. But it was excluded. Upon appeal the Supreme Court held that this was error; but, inasmuch as there were several plaintiffs, and only one of these was bound by the estoppel, whilst the others could have had judgment for the whole tract in question, such error was immaterial. Here, as will be noticed, the finding—illegitimacy—bound only that one of the Crawfords who had been a party to the contest in the orphans' court—whilst, no doubt the others were as much bound as he by the appointment itself, the *res.*

*Mr. Henry E. Davis* and *Mr. Charles Cowles Tucker* for the appellee.

1. The court did not err in its alignment of the parties. The burden of proving affirmatively the allegations of her petition was on the appellee, before the Orphans' Court would admit the will to probate. Those allegations were denied by the appellants, as caveators. The *factum* of the will was in

dispute. A careful examination of the Maryland cases cited by the appellants will disclose the fact that in most, if not all of them, the real issue between the parties was not as to the existence of the will, but as to its validity as a testamentary paper. *Yingling* v. *Yingling,* 16 Md. 112. The question, however, is purely one of practice, discretionary with the trial court. *Lancaster* v. *Collins,* 115 U. S. 222; *Day* v. *Woodworth,* 13 How. 363; *Hall* v. *Weare,* 92 U. S. 728.

2. The trial court did not err in refusing to admit in evidence the records of the Georgia Court of Ordinary. The Supreme Court of the District of Columbia, holding a special term for Orphans' Court business, having first taken cognizance of this cause, had the exclusive right to entertain and exercise such jurisdiction to the final determination of the cause; and, secondly, the appellants, having appeared in the cause, and submitted to the jurisdiction of that court, perpetrated a fraud both upon that court and the Georgia court, in subsequently raising in the latter court the precise question which was pending undetermined in the former court, and the rule of comity between judicial tribunals was was thus violated. Upon the first proposition we cite *Ex parte Chetwood,* 165 U. S. 443; *Ex parte Rhodes,* 48 La. Ann. 1363; *Craig* v. *Hoge,* 95 Va. 275; *Ober* v. *Gallagher,* 93 U. S. 199; *Merrill* v. *Lake,* 16 Ohio St. 373; *Booth* v *Ableman,* 16 Wis. 460; *Ex parte Bushnell,* 8 Ohio St. 599; *Clepper* v. *State,* 4 Tex. 242; Story's Eq. 64*k*; *Slyhoof* v. *Flitcraft,* 1 Ashm. 171; *Taylor* v. *Carryl,* 20 How. 583; *Peck* v. *Jenness,* 7 How. 612; *Smith* v. *M'Iver,* 9 Wheat. 532; *Peale* v. *Phipps,* 14 How. 368; *Shelby* v. *Bacon,* 10 How. 56.

Upon the second proposition, we ask the attention of the court to the following cases: Where a suit involving conflicting liens and mortgages on certain property is instituted in one court, and all persons in interest are made parties to the suit, the subsequent institution of another suit, in a different court, by two of the parties, is a fraud on justice, and will not divest the former court of jurisdiction to determine

all the issues between the parties, in respect of the mort-gaged property, without regard to any changes in the title or possession of the property. *Barkdull* v. *Herwig*, 30 La. Ann. (Part I), 618. Where a court of general jurisdiction, and legally competent to determine its own jurisdiction, has acquired jurisdiction *de facto* over person or subject-matter, it is a rule, founded upon comity between judicial tribunals, that no court will interfere with, or seek to arrest the action of the court in which, and while, the case is still pending and undetermined. *Ex parte Bushnell,* 8 Ohio St. 599. See, also, *Taylor* v. *Fort Wayne,* 47 Ind. 274; *Powers* v. *Springfield,* 116 Mass. 84; *Peck* v. *Jenness,* 7 How. 624; *Taylor* v. *Carryl,* 20 How. 596; *Rusner* v. *Railroad Co.,* 89 Tex. 656; *Zimmerman* v. *So Relk,* 80 F. R. 417; *Wackerle* v. *People,* 168 Ill. 250; *Merritt* v. *Barge Co.,* 49 U. S. App. 85; *Jenkins* v. *Simms,* 45 Md. 532; *Brooks* v. *Delaplaine,* 1 Md. Ch. 351.

The appellants in their brief attempt to justify their proffer of the record of the Georgia court, upon the ground that it contains an admission on the part of the appellee, that Haralson was a resident of Georgia at the time of his death, and was, therefore, evidence which should have gone to the jury. Passing the question as to whether the appel-lant, under the circumstances, could be said to have con-structively admitted the truth of a charge of which it is not shown she had any actual knowledge, it is only necessary to call attention to the fact that this whole record discloses the fact that the record of the Georgia court was offered as an estoppel upon the appellant, and not merely as evidence to go to the jury for its consideration.

It may also be properly urged that it is impossible to see how any admission on the part of the appellant could have been evidence of whether the deceased was or was not a resident of a particular place at the time of his death. She was merely a petitioner in the Orphans' Court, asking that a will should be probated. No declarations, acts or admis-sions on her part could throw any light on the controversy,

or bind the estate of the deceased, or the beneficiaries named in the will, of whom she was only one. Indeed, if she had declared that the deceased was a resident of Georgia at the time of his death, her statement would have involved a conclusion of law, and would so have been inadmissible. Questions of residence and domicil are questions of law, to be determined from the acts, conduct and declarations of the person whose domicil or residence it is sought to ascertain.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the first assignment of error founded upon the ruling of the trial court in the arrangement of the parties, as plaintiff and defendants, respectively, it appears that there are cases in Maryland and elsewhere, in which the ruling of a trial court in the arrangement or alignment of parties as plaintiffs and defendants, in respect of issues sent from a probate court, has been made the subject of exception, and has been assigned as error and reviewed in an appellate tribunal; but that matter has been settled for us by repeated decisions of the Supreme Court of the United States, which have held that the ruling of a trial court on the question as to who should open and close a case is merely upon a matter of practice not proper to be made the subject of exception or to be reviewed upon writ of error. *Lancaster* v. *Collins,* 115 U. S. 222; *Hall* v. *Weare,* 92 U. S. 728; *Day* v. *Woodworth,* 13 How. 363, 370.

But even if the question were an open one, and we were not governed by these controlling authorities, we would have to hold that the contention of the appellants in this regard is untenable. The issues before the jury, while their determination would ultimately have affected the question of the validity or invalidity of the will of Hugh A. Haralson, were addressed merely to the determination of certain preliminary questions; and neither the validity of the will nor its execution was in issue. In fact, the will itself did not figure in any manner in the proceedings before the jury.

The questions propounded to the jury in the issues were really only two; Whether Haralson at the time of his death was a resident of the District of Columbia, and whether at the time of his death, any considerable part of his personal estate lay within this District. The issues respecting his residence in the State of Georgia merely presented the negative of the other propositions, and might, in fact, have been entirely eliminated. Now, upon the main issues, it is too clear for any reasonable doubt that the burden of proving the affirmative was upon the appellee; and, therefore, it necessarily follows that she had the right to be made plaintiff and to open and close the case. There was no error in the ruling of the trial court in that regard.

2. But it is upon the second assignment of error that the appellants principally rely. And here they argue with great learning, force and ingenuity, that, by the refusal of the trial court to admit in evidence the record from the court of the Ordinary in Georgia, they have been denied a right guaranteed to them by the Constitution of the United States in the provision that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." The contention demands our most serious consideration.

The record of the Georgia court, it may be recalled, was offered as an estoppel upon the appellee to conclude her from denying that the deceased Haralson was a resident of the State of Georgia at the time of his death and that he had died intestate. Now, if that record operated as an estoppel, there was nothing for the trial court to do but to direct the jury to return a verdict in favor of the caveators on the issues, and nothing for the jury to do but to return such a verdict. The estoppel would have been conclusive of the whole controversy. And such in fact must have been the result, if the record is admissible at all. In the case of *The Southern Pacific Railroad Co.* v. *United States*, 168 U. S. 1, the Supreme Court of the United States, after much con-

sideration of all the authorities, by Mr. Justice Harlan said:

"There are some cases holding that a judgment, without being specially pleaded, is not conclusive upon the issues to which it relates, but is only persuasive evidence, and that the court is at liberty to find according to the truth as shown by all the evidence before it. But according to the weight of authority and upon principle, the former judgment, if admissible in evidence at all, is conclusive of the matters put in issue and actually determined by it. Mr. Greenleaf says correctly that 'the weight of authority, at least in the United States, is believed to be in favor of the position that where a former recovery is given in evidence, it is equally conclusive in its effect as if it were specially pleaded by way of estoppel.' 1 Greenleaf on Evidence, Sec. 531. This view is in accord with the decisions of this court above cited."

The converse of the proposition is also undoubtedly true, namely, that unless a previous judgment is conclusive as an estoppel, it is not admissible at all in evidence. For unless conclusive, it is no more than hearsay testimony. This position we do not understand the appellants to controvert. We understand that they rely upon the decree of the court of the Ordinary in Georgia as a conclusive estoppel against the proceedings in this jurisdiction. The question then is, whether that decree does operate as such an estoppel.

At the threshold of our inquiry, it seems rather shocking to the judicial mind that the jurisdiction of a court once acquired should be divested out of it by extraneous proceedings in a foreign jurisdiction; or rather, that it should be told that it may not inquire even into its own jurisdiction, because another court, in another State, has, in an *ex parte* proceeding, made some finding of fact which would be inconsistent with the exercise of jurisdiction; and this, too, when it is conceded that there is property within the jurisdiction of the court which the law gives it the right and makes it its duty to administer. We can not think that there is any interstate or international comity, or any con-

stitutional provision that would sanction such an anomaly
in the administration of justice.

That nearly all the personal property of the deceased at
the time of his death was situated in the District of Colum-
bia, no one controverts, and the jury so found.    By virtue
of that fact, and by virtue of the filing of the appellee's peti-
tion for administration upon the estate, that property was
brought under the control and jurisdiction of the Supreme
Court of the District, whether the deceased was a resident of
the District of Columbia, or of the State of Georgia, and
whether he died testate or intestate.    It is the express pro-
vision of our statute law, that "whenever any person hath
died intestate, leaving in this State (District) goods, chattels,
or personal estate, letters of administration may be forthwith
granted by the Orphans' Court of the county wherein was
the party's mansion house or residence; or in case he or she
had no mansion or residence within the State, letters shall
be granted in the county where the party died; and in case
the party neither had mansion or residence, nor died within
the State, letters may be granted in the county wherein
lies, or is supposed to lie, a considerable part of the party's
personal estate."    Act of Maryland of 1798, Ch. 101, Subch.
5, Sec. 2.

So that in this case the Supreme Court of the District of
Columbia, exercising the powers of an Orphans' Court,
whatever may have been the fact in regard to the residence
of the deceased, had the undoubted jurisdiction to grant
letters of administration upon the estate in this District.
And we can not for a moment assume that that jurisdiction
can be ousted by the removal of the assets afterwards from
this District under supposed authority from a foreign juris-
diction.    The complications that may arise from such re-
moval can not enter into our present consideration.    The
fact remains, and it is the only thing which we can consider
in this connection, that, at the time of Haralson's death, and
at the time of the application for letters of administration in

this District, nearly all the personal property of the deceased
was here, and was taken under the control of the Supreme
Court of the District, for the purpose of administration.
The extent and character of that administration, it is true,
remained to be determined. Had Haralson died intestate
or testate? Was he a resident or non-resident of the District
of Columbia at the time of his death? Were the letters to
be granted letters testamentary or letters of administration?
Was there a will or was there not? There was to be ad-
ministration in any event, and the property was under the
control of the court for the purpose of administration. All
the parties in interest came into the court, and instituted
proceedings for the determination of the unsolved questions.
Issues on those questions were formulated between them;
and a trial of those issues was to be had according to law.
Was it competent for one of the parties at this juncture to
go into another jurisdiction, and there, without notice to
the opposing party, and without any knowledge on her
part of the proceeding, without trial, without examination,
without inquiry, without any knowledge of existing condi-
tions communicated to the court to which the application
was made, to assume as true what he knew to be contested,
to allege it as truth when he knew it to be denied, to file a
petition in the court of an Ordinary in the State alleging as
a fact that which he knew was then matter of judicial in-
quiry in the District of Columbia, to conceal from the Ordi-
nary, or at least to fail to disclose to him, what we think
should have been disclosed to him, under the circumstances,
the facts of the existing controversy, and thereupon to pro-
cure from him an order in this *ex parte* and practically
secret proceeding, which he now proposes to use to prevent
judicial inquiry and to estop judicial proceedings in the
District of Columbia? If the law sanctions a proceeding
like this, then undoubtedly the law should be changed as
soon as possible.

There is no necessity to assume that the action of the

appellant, Logan Bleckley, in the premises was not taken
by him in good faith, and that it is not susceptible of a
reasonable explanation.    Bad faith is not charged on either
side; and we may well assume that there was here no im-
proper purpose on the part of anyone, and no intention to
procure an undue advantage.    But the effect of the course
pursued is to affect injuriously the administration of justice
in the District of Columbia, and to deprive the appellee of
her just rights; and we can not think that it can be de-·
fended upon any ground of constitutional right.    The action
of the appellant, although taken in good faith and without
any fraudulent intent, must be characterized as a fraud in
law; and judgments and decrees procured by fraud, whether
the fraud be one of law or one of fact, are not of the class of
"records and judicial proceedings" that is declared by our
Federal Constitution to be entitled to full faith and credit
extra-territorially.    It is a maxim of the law that fraud
vitiates everything; and it will vitiate "records and judicial
proceedings" as it may anything else, and render them null
and void.

The proceeding in this case in the Supreme Court of the
District of Columbia was a proceeding both *in rem* and *inter
partes.*    The court had jurisdiction and control of the sub-
ject-matter; and by operation of law the *res* was either actu-
ally or constructively within its custody.    Then all the
parties in interest came in to litigate the matters in issue
between them.    Now, it has been repeatedly decided by the
Supreme Court of the United States, that, when proceedings
*in rem* have been commenced in a court of competent juris-
diction, and the court has acquired possession, actual or con-
structive, of the *res*, and analogous proceedings are subse-
quently instituted in another court of competent jurisdiction
involving the same property, exclusive jurisdiction for the
purpose of its own suit is acquired by the court which has
first taken possession of the *res*; and the proceedings of the
second court, with reference to those of the first, are to be

treated as null and void—not necessarily null and void for all purposes, but only with reference to the rights acquired in and under the suit first instituted. *Heidritter* v. *Elizabeth Oil Cloth Co.*, 112 U. S. 294; *Covell* v. *Heymen*, 111 U. S. 176; *Porter* v. *Sabin*, 149 U. S. 473; *Rio Grande RR. Co.* v. *Vinet*, 132 U. S. 478; *In re Chetwood*, 165 U. S. 443; *In re Johnson*, 167 U. S. 120; *Ableman* v. *Booth*, 21 How. 506. As stated in several of these cases, the observance of this rule or principle of law is rendered necessary to prevent clashing or collision between courts of equal or concurrent jurisdiction, and to preserve the due and orderly administration of justice.

The action of the court that acquires the later jurisdiction, as we have said, is not to be regarded as null and void for all purposes. Undoubtedly the adjudication of the Georgia court in the present instance is good within the State of Georgia, and may be the foundation even of extra-territorial rights beyond the territorial limits of that State; but against the proceedings upon the same subject-matter in the District of Columbia it can be allowed no validity by the courts of this District. The case is very different, of course, where merely personal rights between parties are adjudicated, as in ordinary actions upon contracts and torts. There only one adjudication is required upon the merits, and only to such adjudication are parties entitled. Cases of this kind stand upon a very different basis from proceedings *in rem*; and especially do they stand upon a different basis from proceedings for the administration of decedents' estates. These last are in their nature local, and have, in general, no extra-territorial force, or at most only a very limited one. *Aspden* v. *Nixon*, 4 How. 467; *Johnson* v. *Powers*, 139 U. S. 156. They can give no authority to any one beyond the territorial jurisdiction of the courts in which they are had; and they can scarcely be held to conclude anything for other jurisdictions. To call such a proceeding one *inter partes* would be absurd; to give it the force and effect of a proceeding *inter partes*

would be to open the door for the grossest fraud and to over-throw all the safeguards of the law.

Moreover, there was question of jurisdiction involved here. The Supreme Court of the District of Columbia, beyond all question, had jurisdiction of the property which was situated here; but there was question whether it had the jurisdiction to admit to probate a certain testamentary paper-writing on file in the office of the Register of Wills for this District. That jurisdiction depended on the matter of the residence of the deceased at the time of his death. The place of residence, therefore, was a jurisdictional fact to be ascertained by the court. Can it be that a court of limited scope and power, like that of the Ordinary in Georgia, pro-ceeding summarily and *ex parte* and outside of the course of the common law, will be permitted to determine that juris-dictional fact finally and conclusively for our courts, and practically nullify the right of trial' by jury given in our courts in such cases by statute? It is an invariable and uni-versal feature of our judicial institutions that every court must be the judge of its own jurisdiction in the first in-stance, and can not be concluded by what any other tribunal, except of course an appellate tribunal, has said or done in the matter. It would be a singular anomaly in the law if the court of the Ordinary in Georgia could, by an *ex parte* order, determine the extent of the jurisdiction of the Su-preme Court of the District of Columbia; as it would equally be an anomaly if the Supreme Court of the District of Columbia attempted to determine and limit the juris-diction of the Ordinary in Georgia. We are satisfied that neither tribunal would attempt consciously thus to trespass upon the prerogatives of the other. And we are satisfied that, if in the present instance the court in Georgia had had its attention called to the proceedings pending in the Su-preme Court of the District of Columbia, which was not done, it would certainly have stayed its hand, and would not have granted administration even to the extent to which it might

properly have granted it—for property in the State of Geor-
gia—until a determination was had of the issues pending in
the District of Columbia.

The cases of the *Southern Pacific Railway . Company* v.
*United States,* 168 U. S. 1, and *Railroad Company* v. *Gorman,*
7 App. D. C. 91, are cited by the appellants in support of
their contention; but we fail to see that these cases have
that effect. To the first of these cases we have already re-
ferred in this opinion upon another point. There it was
held, that "a right, question or fact distinctly put in issue
and directly determined by a court of competent jurisdic-
tion, as a ground of recovery, can not be disputed in a sub-
sequent suit between the same parties or their privies; and
if the second suit is for a different cause of action, the right,
question or fact once so determined must, as between the
same parties or their privies, be taken as conclusively estab-
lished, so long as the judgment in the first case remains
unmodified." But evidently this rule, made, as the learned
justice who spoke for the Supreme Court in that case said in
the opinion, for the peace and repose of society, applies to
matters distinctly put in issue between parties; and it can
therefore have no application to *ex parte* proceedings, to
judgments entered under statutory proceedings upon notice
merely by publication and without personal service of pro-
cess or some equivalent of it, or to proceedings for adminis-
trations upon the estates of deceased persons; nor can it
give validity to judgments procured by fraud.

In the case of *Railroad Company* v. *Gorman,* 7 App. D. C.
91, we held that the grant of letters of administration in
North Carolina could not be made the subject of collateral
attack in a suit instituted by another administrator in this
District, and that a certain finality was to be accorded to
the action of the probate court of the foreign State. But a
reference to the facts of that case will show that it can have
no application to the case now under consideration. There,
it is true, as in the present case, there was controversy as to

the place of residence of the deceased person at the time of his death, which death was the result of negligence on the part of a railroad company in North Carolina, the death having happened in that State, and the deceased having been at least temporarily domiciled there.

The only asset of the estate would seem to have been a claim for damages against the railroad company under the statute of North Carolina. Letters of administration were asked for and granted in the State of North Carolina; and similar letters were asked for and granted to another person in the District of Columbia, where it was also claimed that the deceased, at the time of his death, had his residence. Suit was instituted in North Carolina by the administrator appointed in that State against the railroad company, and a recovery was had or a settlement was effected in pursuance of the suit. A similar suit was instituted in this District, where the railroad company had an office and an agent, by the administrator appointed here; and at the trial of the latter suit the proceedings and recovery in North Carolina were either introduced in evidence or pleaded as an estoppel. It was sought to attack them by a showing that the deceased was a resident of the District of Columbia, and that therefore the Probate Court in North Carolina was without authority to appoint an administrator in that State. And we held that this could not properly be done. Plainly that case differs from the present. The court of North Carolina had the undoubted right to grant administration; for the assets were there, the railroad company was there, and the act of negligence happened there. To the railroad company the administrator of the estate appointed in North Carolina was, both in fact and in law, the representative of the estate, and a settlement with him was a discharge by the estate. Assuredly it should not be called upon to pay again in any and every State where it should happen to be suable in consequence of doing business there, and where an administrator should happen to have been appointed. The first

recovery must be the only recovery; and it would operate as a fraud if each and every administrator in such suits could go back to question the validity of the appointment in North Carolina.

The question in the case now before us is not one of collateral attack on the validity of the appointment of an administrator in another State. It may be conceded that the proceedings in the court of the Ordinary in Georgia are valid for all the purposes which they may legitimately subserve in that State. But we do not think that they can be introduced here to determine the jurisdiction of our own courts, and least of all to divest a jurisdiction already acquired and asserted. And we think the action of the trial court in this case in excluding them from consideration was entirely right and proper.

These views seem to us to be abundantly supported by the authorities. *Johnson* v. *Powers*, 139 U. S. 156; *Aspden* v. *Nixon*, 4 How. 467; *Stacy* v. *Thrasher*, 6 How. 44; *Low* v. *Bartlett*, 8 Allen, 259; *Lindley* v. *O'Reilly*, 50 N. J. L. 636.

In our opinion, it follows from what we have said that the order or decree appealed from should be *affirmed, with costs. And it is so ordered.*

Mr. Chief Justice ALVEY dissenting:

I feel constrained to dissent from the opinion of the majority of the court in this case; and though I regret my inability to agree with my brothers, I shall state briefly the grounds of my dissenting opinion.

The appeal is from an order of the Supreme Court of this District holding a special term for Orphans' Court business. The order is dated the 22d of April, 1898; and by that order a paper, declared to be the last will and testament of Hugh A. Haralson, deceased, is admitted to probate and record; and because there was no executor named in said paper, letters of administration *cum testamento annexo* upon

the estate of the deceased, were, by said order, granted to Hugh H. Gordon.

·The facts of the case, in the order in which they occurred, are important to be borne in mind.

The deceased, Hugh A. Haralson, died in De Kalb County, in the State of Georgia, August 23, 1895. On the 14th of the same month and year, at Savannah, in the State of Georgia, the deceased executed a paper-writing purporting to be his last will and testament; but which paper was signed by the deceased in the presence of but one witness, when, by the law of Georgia, to make a will or testament valid as to personal estate, the attestation of two witnesses were required. By this paper, thus executed, the decedent attempted to dispose of certain bonds of the value of about $9,000. The legatees, to whom these bonds are given by this paper, are his sister, Mrs. Fanny H. Gordon, and his neice, Carrie L. Gordon. These bonds, at the time of the death of Haralson, were on deposit in a bank in the city of Washington, District of Columbia. The paper-writing purporting to be a last will and testament of the deceased having but one witness to its execution, was and is wholly invalid as a testamentary disposition of personal property, by the law of the State of Georgia. But, if the party executing the paper really had his domicil in this District of Columbia, at the time of his death, the paper would be valid and entitled to admission to probate here.

Upon the supposition that the deceased had his domicil here, or was a resident of this District at the time of his death, Mrs. Gordon, the legatee in the supposed will, on the 23d of January, 1896, filed her petition in the Supreme Court of this District, holding a special term for Orphans' Court business, praying for the admission to probate and record of the alleged testamentary paper, and for the granting of letters of administration, *cum testamento annexo*, upon the personal estate of the deceased. By this petition, it is

'alleged that the deceased, *though a citizen* of the State of Georgia, was, at the time of his death, and for several years prior thereto had been, *a resident* of the District of Columbia, and that he died in the State of Georgia, where he was tem- 'porarily engaged in the discharge of his duties as an official of the Government of the United States. It is alleged in that petition that the deceased, at the time of his death, was possessed of personal estate, consisting chiefly of bonds and stocks, of the value of about $10,000, all of which, except an insignificant part thereof, was then in the District of Columbia. The petition also names the parties who were the next of kin and distributees of the personal estate of the deceased, and all of whom were non-residents of this District, and citations were prayed to such parties.

To this notification parties interested appeared, and on the 6th of March, 1896, a caveat to the desired probate of the paper propounded as the last will and testament of the deceased was filed by and on behalf of the next of kin of the deceased, other than Mrs. Gordon; and against the probate of the paper propounded, three grounds were stated: 1st. That the said paper-writing is not the last will and testament of the deceased; 2d. That the deceased was not, at the time of his death, a resident of the District of Columbia; and, 3d. That at the time of his death the deceased was a citizen and resident of the State of Georgia.

Upon this caveat to the probate of the paper, the court, on the 10th of April, 1896, made up five issues to be sent to a court of law to be tried by a jury. These issues were: 1st. Whether the deceased was, *at the time of his death*, a resident of the District of Columbia? 2d. Whether the deceased was, *at the time of his death*, a citizen and resident of the State of Georgia? 3d. Whether the deceased was, *at the time of the making of the paper-writing*, propounded as his last will and testament, *a resident of the District of Columbia?* 4th. Whether the deceased was, *at the time of the making of said paper-writing, a citizen and resident of the State of Georgia?*

And 5th. *At the time of his death*, did any considerable
part of the personal estate of the deceased exist or lie
within the District of Columbia? Some of these issues,
especially the third and fourth, were not material to the
question of fact upon which the validity of the paper pro-
pounded depended, because not determinate of the real ques-
tion involved.

The issues thus framed were sent to the court of law to
be tried, but the trial did not take place until February,
1898. The verdict of the jury was, upon the evidence sub-
mitted to them, that the deceased was, at the time of his
death, a resident of the District of Columbia, and that he
was not, at that time, a citizen and resident of the State of
Georgia; that the deceased, at the time of making the paper
propounded as his will, was a resident of the District of
Columbia, and was not, at that time, a citizen and resident
of the State of Georgia; and that, at the death of the de-
ceased, a considerable portion of his personal estate was in
the District of Columbia.

This verdict was certified to the special term for Orphans'
Court business, and was made the basis of the order of the
22d of April, 1898, from which this appeal is taken.

The record shows that, on the 6th of April, 1896, just one
month after the caveat filed, there was filed by Logan Bleck-
ley, one of the next of kin of the deceased, and one of those
who had filed the caveat to the probate of the paper pro-
pounded in the court in this District, a petition in the court
of the Ordinary of De Kalb County, in the State of Georgia,
asking for citation of the parties interested, and for letters
of administration upon the personal estate of the deceased.
Upon this application, at the May term of that court, 1896,
an order was passed by the Ordinary, reciting the facts of
the application, and that citation had been published, ac-
cording to law, requiring all concerned to appear and show
cause if any they could, why letters should not be granted;
and, as it is declared, it appearing "that the deceased died *a*

*resident* of said county, *intestate,* and that said applicant is a
citizen of this State, lawfully qualified for said administra-
tion, and no objection appearing to the contrary," it was
thereupon ordered, that said Logan Bleckley be appointed
administrator, etc. And letters were accordingly granted.

The trial of the issues framed on the caveat did not take
place until March, 1898, nearly two years after the grant of
letters of administration in the State of Georgia, and more
than two years after the paper had been propounded for
probate. On the trial of the issues the caveatee was given
the position of plaintiff on the record, and this was mani-
festly correct, as the *onus* of proof was upon her. She was
required to offer affirmative proof in support of the first,
third and fifth issues; and as to the second and fourth
issues, the *onus* of proof was upon the caveators. And pro-
ceeding according to this order of proof, the caveatee offered
evidence to show, according to the bill of exception, that
the deceased, both at the date of the alleged testamentary
paper, and at the time of his death, was a resident of the
District of Columbia. And in support of the fifth issue, it
was admitted that at the time of the death of the decedent,
he had on deposit in a bank, and in a loan and trust com-
pany, in this District, money and securities amounting to
about $9,000, and that said money and securities *constituted
the entire estate of the decedent,* with the exception of about $200
found outside of the District of Columbia. It was further
admitted that the money and securities so on deposit in this
District, were subsequently removed from the said District
by Logan Bleckley, claiming to act as administrator of the
estate of the deceased, under and by virtue of the letters of
administration issued to him by the Court of Ordinary in
the State of Georgia. Upon this proof the caveatee rested
her case.

The caveators thereupon produced and offered in evidence,
to sustain the issues on their part, a duly certified transcript

of the record of De Kalb County Court of Ordinary, in the State of Georgia.   This transcript was offered as tending to show that the deceased had died *a resident* of said county of De Kalb, *intestate*, and that the caveatee was thereby estopped to deny those facts.   But the court below rejected the record *in toto*, and would not admit it for any purpose, and the caveators excepted.   The only question, therefore, presented on this appeal is as to the admissibility of that record of the proceedings of the Court of Ordinary in the State of Georgia.

The question is an important and a delicate one, and involves many and serious consequences; and to determine the question thus presented, we must look to and consider the facts involved in the issues on trial, and the nature of the judicial proceeding offered in evidence.   It may be that the effect attributed to the judicial proceeding in Georgia, in the offer made, was too broad and conclusive, and I think it was so.   But while the record may not operate as an estoppel on the question of domicil, it does not follow that it should have been rejected as furnishing no evidence whatever.   The great and controlling question under the issues was, where was the real and actual domicil of the deceased at the time of his death?   That question was jurisdictional in its nature, and it was the fact involved in the issues upon which the rights of the parties depended.   I think the record offered in evidence was admissible as evidence in chief under issues two and four, and as evidence in rebuttal of the evidence offered by the caveatee in support of issues one and three.   Treating the question of domicil as in the nature of a jurisdictional question, it would seem to follow that the judicial proceedings in the Court of Ordinary in the State of Georgia would not preclude inquiry into the jurisdiction of that court, in which the proceedings took place, *over the subject-matter,* or the parties affected thereby, *nor into the facts necessary to give such jurisdiction,* namely,

the fact of domicil of the decedent at the time of his death. *Simmons* v. *Saul,* 138 U. S. 439, 448; *Thompson* v. *Whitman,* 18 Wall. 457; *Cole* v. *Cunningham,* 133 U. S. 107.

The record, however, should have been admitted, in connection with the other facts, as reflecting upon *the fact of domicil* of the deceased at the time of his death. For if it be true, as declared by the judicial finding of the Georgia court, that the decedent was, at the time of his death, a resident of or domiciled in the State of Georgia, then he certainly died intestate as to all his personal property, wherever situate. It is conceded that the paper-writing propounded for probate in this jurisdiction, as a testamentary instrument, has no validity whatever by the law of the State of Georgia; and it is also conceded that before the instrument was admitted to probate here and annexed to letters of administration, all the personal property belonging to the estate of the deceased had been removed from this jurisdiction and taken to the State of Georgia by the administrator appointed there; so that there was no property whatever in this jurisdiction upon which the supposed testamentary paper and the letters of administration granted here could operate. And upon the assumption that the domicil of the deceased at the time of his death was in Georgia, the claim to and removal of such bonds, money, or securities, by the Georgia administrator, were in all respects lawful and proper. Act of Congress, February 28, 1887 (24 Stat. 431); *Wilkins* v. *Ellett,* 9 Wall. 740; *Wyman* v. *Halstead,* 109 U. S. 654, 656; *Parsons* v. *Lyman,* 20 N. Y. 103. It is a principle well settled that where there are no debts due from the estate in the jurisdiction where a foreign debtor of the estate resides, and no ancilliary administration has been granted there, the principal administrator may, in such foreign State, receive a voluntary payment from the debtor, which will be a good discharge of the debt, *even if an ancillary administrator should be afterwards appointed. Wilkins* v. *Ellett,* 9 Wall. 740; *Mackey* v. *Coxe,* 18 How. 100, 104; *Wyman* v. *Halstead, supra.* Nor

did the fact of the pendency of the issues formed on the caveat to the alleged testamentary paper, involving the question of the residence or domicil of the decedent in this District, or the paper after it had been admitted to probate here, with letters of administration, affect in any manner the right of the foreign administrator, as to acts done and rights attached before probate obtained. He derived his authority from a competent jurisdiction, and that authority he was entitled to have respected by the courts of this jurisdiction, both by express provision of statute, and by the comity of States. The subsequent probate of the paper and the grant of letters of administration here will not have the effect of vacating the letters of administration granted in Georgia, or of divesting the administrator in that State of the funds that he lawfully received and removed from this District; that was a lawful act done by him by virtue of a competent authority derived from the court of Ordinary in Georgia. *Schluter* v. *Bowery Saving Bank,* 117 N. Y. 125. If the deceased was in fact domiciled in the State of Georgia at the time of his death, as he was found and declared to have been by a court of competent jurisdiction in that State, then the probate of the paper in this District was wholly without effect and operation, even as to the bonds and securities mentioned in the paper. For it is now a settled principle in the jurisprudence of this country, as it is in the jurisprudence of England, that the succession to and distribution of personal property is regulated by the law of the owner's domicil, and not by the *lex loci rei sitæ*; and that a will of personal estate must, in order to pass the property, be executed according to the law of the place of the testator's domicil at the time of his death. This principle appears to have been first definitely laid down in this country in the case of *Deserbats* v. *Beiquiers,* 1 Binney, 336. In that case, a foreign testator, domiciled abroad, had made a will of his personal estate, invalid according to the law of his domicil, but valid according to the law of Pennsylvania; and the question was,

whether it was competent and valid to pass personal property situate in Pennsylvania. This question was much considered, but the court held that the paper was not valid and effectual to pass personal property situated in Pennsylvania; and laid down the general doctrine, that a will of personal property must, in order to pass the property, be executed according to the law of the place of the testator's domicil at the time of his death. If void by that law, it is a nullity everywhere, although it is executed with the formalities required by the law of the place where the personal property is locally situate. The court, in that case, assert what has been repeatedly held in subsequent cases, that, in respect to the controlling effect of the domicil, there is no difference between cases of succession by testament, and by intestacy. 1 Sto. Confl. Laws, Sec. 468, and cases cited.

In the case of *Whicker* v. *Hume*, 7 H. Lo. Cas. 124, the questions involved. in this case were very fully considered, both at the bar and by the court. In that case the testator had died in Paris, where he had lived for some time, and he made his will there, but he made it in English form, and it was admitted to probate in England. One, of the questions much considered was, at what place the testator really had his domicil at the time of his death—whether in France, in Scotland, or in England, as he had lived in all three countries. It was concluded upon the facts, that he was domiciled in England at the time of his death. And the general doctrine was laid down and maintained, that a will to be valid must be executed according to the law of the country where the testator was domiciled at the time of his death; and that while the grant of probate, not vacated on appeal, conclusively establishes that the will was so executed, yet it does not conclude on the question of domicil. In that case there were several opinions delivered, and the law lords all concurred in maintaining the general principle, that the maxim, *mobilia sequuntur personam*, is part of the *jus gentium*, and, therefore, that the post mortuary distribu-

tion of the effects of a deceased person must be made according to the law of his domicil at the time of his death; and, consequently, if the law of the country allowed the deceased to make a will, that will must be made as that law requires.

The Lord Chancellor (Chelmsford), after stating some of the general features of the case said: "I apprehend, that this will having been admitted to probate, it must be taken to be a valid will wherever it shall turn out that the testator was residing at the time of his death, but that the place of domicil is still open for consideration, and also the validity of the bequest contained in the will, and the effect of it according to the law of the domicil of the testator. The question, therefore, being open for consideration as to where the testator was domiciled at the time of his death, it will be necessary to enter shortly into the consideration of the evidence upon that subject."

Lord Cranworth, in his opinion, said: "The first question made is one that was extremely important, namely, the point, whether probate was or was not conclusive evidence of the domicil. Now, I have no hesitation in saying that the affirmative of that proposition can not be a correct exposition of the law. A probate is conclusive evidence that the instrument proved was testamentary according to the law of this country. But it proves nothing else. That may be illustrated in this way. Suppose there was a country in which the form of a will was exactly similar to that in this country, but in which no person could give away more than half his property. Such an instrument made in that country by a person there domiciled, when brought to probate here, would be admitted to probate as a matter of course. Probate would be conclusive that it was testamentary, but it would be conclusive of nothing more, for after that there would then arise the question, how is the court that is to administer the property to ascertain who is entitled to it? For that purpose you must look beyond the

probate to know in what country the testator was domiciled, for, by the law of the country the property must be administered. Therefore, if the testator, in the case I have supposed, had given away all his property, consisting of £10,000, it would be the duty of the court that had to construe the will to say £5,000 only can go according to the direction of the will, and the other £5,000 must go in some other channel. Therefore, I think it is clear that that proposition is one that can not be maintained."

And Lord Wensleydale, while giving his own definition as to what constitutes domicil of a testator, said: "I take it to be a perfectly clearly established proposition at this day, confirmed by the case of *Stanley* v. *Bernes*, 3 Hagg. Eccl. R. 373, that the succession must be regulated according to the law of that country where the deceased was domiciled at the time of his death, and that to make a valid will it must be executed according to the forms of the law of that country."

As I have already stated, it is freely conceded by the appellee that the paper produced here for probate is wholly void and without effect by the law of the State of Georgia, because not attested by more than one witness. But if it be true, that the deceased was, at the time of his death, domiciled in this District, then the paper, though attested by one witness only, is a good and valid testamentary paper, and is therefore entitled to be admitted to probate here. The important question, therefore, to be determined on the trial of the issues framed on the caveat to the paper was the question of domicil of the deceased, at the time of his death— whether in the State of Georgia or in this District of Columbia. I am of opinion that the Georgia record of the grant of administration in that jurisdiction ought to have been admitted in evidence to the jury, in connection with the conceded facts that the deceased was a citizen of Georgia, that the paper in contest was executed in that State, and that the deceased died in that State soon after the paper was made.

But, as the case has been decided by the court below, and affirmed by a majority of this court, the question will arise, what practical effect can be given to the probate and letters of administration that have been granted here? There is, as we have seen, an antecedent administration in the State of Georgia, founded upon the alleged domicil or residence of the deceased in that State at the time of his death, and that he died intestate; and moreover, all the property that the supposed testamentary paper and letters of administration granted here, could affect or operate upon, has been, under the sanction of law and authority, withdrawn and taken to the jurisdiction of the original or first administration. It is hardly supposable that the courts of Georgia will give effect to the probate of the paper and letters of administration granted here regardless of their own local administration. It is well settled by the courts of that State, that the courts of Ordinary there are courts of original, exclusive and general jurisdiction over decedents' estates, and the subject-matter of their orders and judgments are no more open to collateral attack than the judgments, decrees or orders of any other court. *Veach* v. *Rice*, 131 U. S. 293, 314; *Davie* v. *McDaniel*, 47 Ga. 195; *Barnes* v. *Underwood*, 54 Ga. 87; *Arnold* v. *Arnold*, 62 Ga. 627; *Tant* v. *Wright*, 65 Ga. 412. The case, therefore, necessarily presents, or will present, an unfortunate conflict of law and jurisdiction, and the only hope is that the Supreme Court of the United States, if the case should reach that tribunal, may find a way of overcoming the difficulty.