### WEITKNECHT et al v. DISTRICT OF COLUMBIA.

#### No. 10906.

United States Court of Appeals
District of Columbia Circuit.

Submitted Dec. 12, 1951.

Decided March 20, 1952.

A. Harding Paul and Rudolph H. Yeatman, Jr., Washington, D. C., submitted on the brief for petitioners.

Vernon E. West, Corporation Counsel for the District of Columbia, Chester H. Gray, Principal Asst. Corporation Counsel, and George C. Updegraff, Asst. Corporation Counsel, all of Washington, D. C., submitted on the brief for respondent. Harry L. Walker, Asst. Corporation Counsel, Washington, D. C., also entered an appearance on behalf of respondent.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition for review of a decision of the District of Columbia Board of Tax Appeals.[1] The sole question is whether petitioners' decedent, John H. Edwards, was domiciled in the District of Columbia at the time of his death, so as to subject his property to the inheritance taxes imposed by Section 47–1601 of the D.C.Code (1940). The Board of Tax Appeals ruled that he was domiciled in the District and upheld an assessment of $22,151.

John H. Edwards was born in Mitchell, Indiana, in 1869. He grew up and attended school in Indiana, entered the practice of law in Mitchell with his father, and between 1902 and 1920 held public office in his home state. In 1921 Edwards came to Washington, D. C., to become Solicitor of the Post Office Department. In 1923 he moved to the Department of the Interior, where he held successively the positions of Solicitor and Assistant Secretary, by presidential appointment. His public service terminated on May 1, 1933, shortly after the change in administration. From that time until his death in 1945, Mr. Edwards continued to live in Washington, occupying a three-room apartment. During this period he was not actively engaged in any profession or business, but lived primarily on income from investments. He was never married.

In District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329, the Supreme Court set forth the principles which must govern our decision in this case. "In order to retain his former domicile, one who comes to the District to enter Government service must always have a fixed and definite intent to return and take up his home there when separated from the service. * * * The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary. * * *" 314 U.S. at page 455, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329.[2]

Petitioners in this case introduced considerable evidence before the Board of Tax Appeals in an effort to show that Edwards, although he lived in Washington, was domiciled in Indiana. The evidence showed that he retained ownership of the family residence in Mitchell until around 1937, when he caused the vacant home to be demolished because of its state of disrepair. Witnesses testified that Edwards had said on various occasions that he intended to return to live in Mitchell, and that he had spoken of building a new home either on the old site or elsewhere in or near the town. Almost every year Edwards paid a visit to his old hometown. These trips appear to have been partly business and partly social in nature, for while there, in addition to visiting relatives and friends, he attended to the tax affairs of a local company whose counsel he had been during his years of legal practice in Mitchell. This firm paid him a fee for his services and paid his traveling and living expenses on his visits. On these occasions, he used his old Mitchell law office.[3] When Edwards voted, he voted in Indiana, though the Board was not persuaded that he had cast a ballot after he left the Government service in 1933.[4]

---

1. Pursuant to Section 47–2404 of the D.C. Code (1940).

2. Though the Murphy case involved income taxes, this court applies its principles in inheritance tax cases as well. E. g., Pace v. District of Columbia, 77 U.S.App.D.C. 332, 135 F.2d 249, affirmed 320 U.S. 698, 64 S.Ct. 406, 88 L.Ed. 408. The practical application of these principles may vary in the two types of cases, inasmuch as the taxpayer in income matters is in most instances still alive and kicking—literally as well as figuratively. He is thus able to declare with some emphasis and in some detail his intention with regard to domicile and future plans. The essential tests, however, remain the same.

3. The office continued to bear his name on the door and window, and contained his law books. It was used throughout the year by another lawyer.

4. "Whether or not one votes where he claims domicile is highly relevant but by no means controlling. Each State prescribes for itself the qualifications of its voters, and each has its own machinery for determining compliance with such

During all the time he lived in Washington, Edwards paid his Federal income taxes to the Collector of Internal Revenue at Indianapolis, giving his permanent address as Mitchell and his current address as Washington. Beyond this his practice in paying taxes seems to have varied. He paid the Indiana tax on intangibles in 1936, 1937 and 1938; but he does not appear ever to have paid Indiana gross income taxes. He filed personal property tax returns in the District of Columbia for the years 1938, 1939, 1940, 1943 and 1944, and paid District income taxes from 1939 through 1944. Four of his eleven District tax returns[5] contained notations to the effect that Washington was not his permanent residence. Upon Edwards' death his will, which had been drawn in Mitchell in 1943 (and which described him as "of Mitchell"), was admitted to probate in the Circuit Court of Lawrence County, Indiana. He then owned in the District of Columbia about $265 worth of household goods, and cash and bonds amounting to slightly more than $100,000. Securities and cash of over $140,000 in New York City, and the home-site and three cemetery lots in Mitchell, substantially made up the balance of his estate. The will provided generous bequests to the University of Indiana, which was Edwards' alma mater and long an object of his loyalty. The executors paid an inheritance tax to Indiana of $1,776.[6]

Petitioners maintain that throughout his stay in Washington Edwards intended to return to Mitchell, Indiana, and that he repeatedly voiced this intent. Witnesses testified to that effect before the Board of Tax Appeals. But we think petitioners have failed to meet the test laid down in District of Columbia v. Murphy, supra. The intent they have shown appears to have been no more than a "floating" one; it cannot be called "a fixed and definite intent to return" to Indiana "when separated from the [Federal] service." 314 U.S. at page 456, 62 S.Ct. at page 310, 86 L.Ed. 329. Edwards said that he intended to return to Mitchell to live, but he stayed in Washington and tore down his house in Mitchell.[7] There seems to have been no consistent policy in his payment of taxes, unless possibly it was to pay in the jurisdiction where the assessment was lower. On these and other points, Edwards' conduct was ambiguous at best. But we can see no explanation at all—and petitioners have offered none—for Edwards' remaining in Washington for twelve years after he ceased to have any business in the District, except the obvious explanation that he preferred to make his home here.[8] As the Board of Tax Appeals said, "his situation was such that he could live wherever he chose." Certainly his remaining under these circumstances was quite inconsistent with a "fixed and definite" intent to return to Indiana upon his separation from the Government. Plainly the situation is altogether different from that presented in Pace v. District of Columbia, 77 U.S.App. D.C. 332, 135 F.2d 249, affirmed 320 U.S.

qualifications. A vote cast without challenge and adjudication may indicate only laxity of the state officials * * *." District of Columbia v. Murphy, 314 U.S. 441, 456, 62 S.Ct. 303, 310, 86 L.Ed. 329.

5. The personal property tax returns for 1938, 1939, 1940 and 1944.

6. Although Congress, in choosing domicile as the fact determining where taxes were to be paid, intended to avoid double taxation, District of Columbia v. Murphy, 314 U.S. 441, 450-52, 458, 62 S.Ct. 303, 310, 86 L.Ed. 329, it is obvious that the executors cannot be permitted to foreclose the domicile issue by paying the tax in the jurisdiction of their choice.

7. If Edwards had continued in Government service, his demolition of his Indiana home would be of little significance. "* * * Congress did not intend that one living here indefinitely *while in the Government service* be held domiciled here simply because he does not maintain a domestic establishment at the place he hails from. Such a rule would result in taxing those unable to maintain two establishments, and exempting those able to meet such a burden—thus reversing the usual philosophy of income tax as one based on ability to pay." (Italics supplied.) District of Columbia v. Murphy, 314 U.S. 441, 454, 62 S.Ct. 303, 308, 86 L.Ed. 329. Our decision does not compel the maintenance of two residences in order to avoid a tax domicile in the District of Columbia, because nothing has been shown which might have prevented Edwards from abandoning his Washington home.

8. Compare Beedy v. District of Columbia, 75 U.S.App.D.C. 289, 126 F.2d 647.

 

698, 64 S.Ct. 406, 88 L.Ed. 408, where the decedent was compelled to remain in Washington by reason of continued Government employment.[9] The factor of Government employment was removed from this case in 1933. When Edwards remained in the District after that date, it was evidently because he preferred to live here. One who lives in Washington by choice—because he likes its amenities or its climate—cannot claim the consideration due to one who must bend his convenience to the demands of public service.

To sum up: in determining domicile, actions are far more persuasive than words. See Texas v. Florida, 306 U.S. 398, 425–26, 59 S.Ct. 563, 83 L.Ed. 817. Edwards' actions demonstrate that, whatever the purport of his declarations, his intent to return to his former domicile was not crystallized or settled. He entertained a great fondness for his boyhood home; he may well have desired to go back there before he died.[10] But such a desire is not enough to avoid payment of tax obligations incurred in the place of actual abode. "A mere sentimental attachment will not hold the old domicile." District of Columbia v. Murphy, 314 U.S. at page 456, 62 S.Ct. 303, 310, 86 L.Ed. 329.

■■■■■ Petitioners have attacked the findings of fact of the Board of Tax Appeals. In a proceeding such as the present we must accept the Board's findings unless they are clearly wrong. District of Columbia v. Pace, 320 U.S. 698, 701–703, 64 S.Ct. 406, 88 L.Ed. 408. While we believe that the Board's findings in this case

were substantially correct, where there seemed room for dispute we have taken a view more favorable to petitioners. Even so, the Board's conclusion must stand that after 1933 Edwards did not have a fixed and definite intent to return to Indiana, and that consequently he died domiciled in the District of Columbia.

Affirmed.

---

9. "Clearly, then, *as long as his Federal service continued*, it is immaterial, in itself, whether the decedent's residence here lasted twenty-seven days, twenty-seven years, or even longer. However, the onus of demonstrating the continuing character of the state domicile has been placed upon the Federal employee. He must carry the burden of proving that his residence here is of a transitory nature, *as a convenience or necessity to, and roughly coterminous with, his Federal service.*" (Emphasis supplied.) Pace v. District of Columbia, 77 U.S. App.D.C. at page 334, 135 F.2d at page 251. Collier v. District of Columbia, 82 U.S.App.D.C. 145, 161 F.2d 649; Beckham v. District of Columbia, 82 U.S.App.

D.C. 296, 163 F.2d 701, certiorari denied 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400; and Sweeney v. District of Columbia, 72 App.D.C. 30, 113 F.2d 25, 129 A.L.R. 1370, certiorari denied 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402, are for the same reasons also inapposite.

10. Domicile here does not require "an affirmative intent to remain here the rest of [one's] days." District of Columbia v. Murphy, 314 U.S. 441, 455, 62 S.Ct. 303, 309, 86 L.Ed. 329; Butler v. District of Columbia, 86 U.S.App.D.C. 207, 181 F.2d 790, certiorari denied 340 U.S. 826, 71 S.Ct. 62, 95 L.Ed. 607; Arbaugh v. District of Columbia, 85 U.S.App.D.C. 97, 176 F.2d 28.