**Verna Z. SHAFER, Appellant,**

v.

**CHILDREN'S HOSPITAL SOCIETY OF LOS ANGELES, CALIFORNIA, et al., Appellees.**

No. 14478.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 18, 1958.

Decided Feb. 26, 1959.

Mr. Richard V. Waldron, Washington, D. C., for appellant.

Mr. Harry E. Taylor, Washington, D. C., also entered an appearance for appellant.

Mr. Robert L. Wright, Washington, D. C., for appellees.

Before WILBUR K. MILLER, BAZELON and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This case was instituted by the filing of a petition by the sister of decedent, in material part alleging that one Clarence Edward Tunnell was a citizen of the United States, a resident of the District of Columbia, and died on October 29, 1957, in the District of Columbia; that decedent left a writing dated June 20, 1953, which is on file in the Office of the Register of Wills of the District of Columbia; that the writing is not a valid will, not having been witnessed as required by law; and that there was no other will of decedent. The petition further alleges that the decedent was unmarried and that his only heir at law and next of kin is the petitioning sister, appellant herein.

It is further alleged that decedent left no real estate in the District of Columbia but left certain unimproved real estate in San Diego, California, assessed at $1,240; that he left personal property in the District of Columbia of the value of some $25,000, consisting of shares of stock, cash and bank and building association accounts, and deposits of about $2,200 in building association accounts in California. The petition further alleges that the stocks, cash and bank and building association records were in the safe deposit box [1] of the decedent at the Union Trust Company of Washington, D. C., except that certain miscellaneous items had been taken over by the Metropolitan Police Department on the death of decedent; and that there was some tangible personal property of no value stored in Los Angeles, California. The petition prayed that the writing dated April 20, 1953, be denied

probate and record, and that letters of administration be granted to the sister's attorney.

By amendment to the petition, it was set forth that the decedent moved to the District of Columbia in 1933, since which time he continuously lived here and, from 1939, continuously maintained a residence at 1424 Massachusetts Avenue, N. W., in the District of Columbia, until the date of his death; and that decedent was a disabled veteran of World War I and had not been employed for a number of years prior to his death.

The paper, which was in the handwriting of testator, was unwitnessed. It contained, among others, the statement: "My legal residence is Los Angeles, California, it has been since 1916 and I enlisted there in the United States Army in 1917." It left his estate to parties other than the sister of decedent. All parties beneficiary were served with substituted process; two of the three appeared in the administration cause, filed answer, and alleged that decedent was, at the time of his death and at the time of the execution of the writing, legally domiciled in California, that the writing was valid under the laws of that state, and that it would be presented for probate at Los Angeles.

The petition and the answer came on for hearing before the court but, apparently, without the taking of any testimony on the subject of domicile. The court entered the order appealed from, which reads as follows:

"This cause having come on to be heard upon the petition of Verna Z. Shafer for an order denying probate to a document on file in the Office of the Register of Wills for the District of Columbia, designated by the above named decedent as his Last Will and Testament, the Court having heard the argument of counsel, and it appearing that no petition for the probate of said document has yet been filed in this Court, and that

---

1. The records of the Office of the Register of Wills disclose that the writing in question was removed from the box by a Deputy Register of Wills and filed in the Office of the Register.

a petition for probate of the said document has been filed on behalf of one of the beneficiaries named therein in the Superior Court of the State of California in and for the County of Los Angeles.

"It Is Hereby Ordered, Adjudged and Decreed That:

"The foregoing petition of Verna Z. Shafer is denied without prejudice to refiling such a petition when and if the aforesaid California Court declines to assume jurisdiction of the aforesaid petition for probate."

Appellant filed a motion for rehearing, asking that the court frame an issue on the question of domicile, to be tried by a jury in the District Court. This motion for rehearing was overruled and this appeal followed.

Our dissenting brother is of the view that the appeal is premature, although appellees make no such claim. The file of the Office of the Register of Wills, of which we take judicial notice, shows the following minute entries on the face of the file jacket:

"Feb. 10, 1958—Petition for letters of administration and amended petition argued and denied, with leave to reinstate if and when the California court denies jurisdiction. Judge Letts"

The order on this was filed fourteen days later, February 24, 1958.[2]

"Mar. 17, 1958—Motion for rehearing and to have issue of domicile tried by jury; denied, Letts, J."

Although it is apparent from the minute entry that the judge announced his decision on the motion for rehearing on March 17, 1958, it was not until April 16, 1958, that the order thereon was entered. In the meantime and on April 15, 1958, the notice of appeal was filed.

We do not know whether appellant treated the motion for rehearing as denied on March 17, 1958, the date of the minute entry, or whether the formal order of denial was handed to the judge on April 15 and not entered until the 16th. But in any event it is clear that, since the motion for rehearing tolled the time for appealing the order of February 24, 1958, the present appeal from that order may be said to be within time. Fed.R.Civ.P. 73(a), 28 U.S.C.A.

Nor do we think that the appeal should be dismissed on the ground that it offends Rule 54(b). The petition did not make two claims. It had only one purpose; namely, the securing of administration. Section 20–201, D.C. Code (1951), provides that on the death of any person leaving real or personal estate in the District, letters of administration on his estate may be granted, on the application of any person interested, *on proof satisfactory to the probate court that the decedent died intestate*. Accordingly, the petition properly asked for letters of administration and necessarily claimed that decedent died intestate, as he obviously did under the laws of the District of Columbia, the will being unwitnessed. That claim was just as necessary as was the claim that the decedent left personal or real estate in the District of Columbia.

It cannot be said that the order in this case was not a final order. It referred to the "petition" of appellant, and it was the "petition" which it dismissed. It left only a right to again petition *if*, and only *if*, and when the California court did not assume jurisdiction.

On the merits we think the court should have framed an issue on the question of domicile and should have set the case for hearing before a jury. Accordingly, the order of the District Court must be reversed and the cause remanded for that purpose.

It is clear that the District Court had jurisdiction to order the framing of this issue. Appellees here urged, and the District Court held, that "no petition for the probate of said document has yet

---

2. This is the order which is appealed.

been filed in this Court." However, the question of the probate of the document was before the court, although only incidental to the plea for administration. Naturally no purpose would be served by filing such a petition for probate because the document could not be admitted to probate here, it not having been executed in accordance with the law in force in the District of Columbia. It seems to us that the prayer for rejection is all that is required, and appellant had asked, in accordance with the practice prevailing in the Probate Court, that administration be granted and the writing be denied probate.

The issue of domicile was thus raised in the answer of the appellees. The original petition, as do most petitions for probate or administration filed with the Register of Wills, simply alleged residence. The answer set up the claim that the domicile of the decedent was actually in California. This raised an issue which should have been tried before a jury. Domicile is a preliminary issue, even if there are other issues later to be tried. This issue being once determined, the court here would then be in position, if domicile be determined to be the District of Columbia, to grant administration or, if domicile be determined to be the State of California, to send the will to that state.

The fact is that the purported will has never left the District of Columbia, despite which the court in California acted. It further appears that the proceeding in the California court was instituted after appellant had commenced her action here for the denial of the writing and for letters of administration. The petition for letters of administration was filed here on November 29, 1957, and the records of the Register of Wills here indicate that it was not until January 27, 1958, that counsel for appellees ob-

tained from that office a certified copy of the writing.[3]

The case of Overby v. Gordon, 177 U. S. 214, 20 S.Ct. 603, 44 L.Ed. 741, is closely akin to the instant case. There the proceedings originated in the Supreme Court of the District of Columbia, 13 App.D.C. 392 (now the United States District Court for the District of Columbia) on a petition filed January 23, 1896, to obtain probate, as the last will and testament of Hugh A. Haralson, of a paper purported to have been executed by him and for a grant of letters of administration, c. t. a. It was claimed that Haralson had been a resident of the District of Columbia at the time of his death and for several years prior thereto, but that he died in Georgia possessed of certain personal property of the value of $10,000, all of which, except an insignificant part thereof, was at the time of his death located in the District of Columbia. Issues were framed on April 10, 1896, on the claim that Haralson was at the time of his death a resident of the District of Columbia. The issues were as follows:

"1. Was the said deceased at the time of his death a resident of the District of Columbia?

"2. Was the said deceased at the time of his death a citizen and resident of the State of Georgia?

"3. Was the said deceased at the time of the making of the paper writing purporting to be his last will and testament a resident of the District of Columbia?

"4. Was the said deceased at the time of the making of the paper writing purporting to be his last will and testament a citizen and resident of the State of Georgia?

"5. At the time of his death did any considerable part of the person-

3. From the brief of appellees, and from what we were told at the oral argument, it appears that a copy of the document was admitted to probate and record in California on April 3, 1958, and one Axelrad was appointed administrator with the will annexed. So far as ap-

pears, appellant never was personally served in California, nor did she appear there; apparently, substituted process was issued by that court. Thus the proceeding there was essentially *in rem*. This order was not before the District Court.

al estate of the said deceased lie within the District of Columbia?"

Before trial of these issues in February *1898*, it appears that the assets within the District of Columbia had been removed by a caveator claiming to act as administrator of the estate of decedent under grant of letters of administration issued in May *1896* by a court of the State of Georgia, which proceedings had been initiated after those instituted in the District of Columbia. There was offered in evidence the transcript of the record of the appointment of the administrator in Georgia. The trial court, however, refused to admit this in evidence, and a jury returned a verdict, answering "Yes" to the first, third and fifth questions, and "No" to the second and fourth questions. Thereupon, an order was entered by the then Supreme Court of the District of Columbia admitting the purported will to probate and record as the last will and testament of the decedent and granting letters of administration, c. t. a. The Court of Appeals for the District of Columbia affirmed, 13 App.D.C. 392, and a writ of error issued from the Supreme Court of the United States. The Supreme Court affirmed, 177 U.S. at page 227, 20 S.Ct. at page 608, saying:

"We are of the opinion that the De Kalb county court possessed the power to determine the question of domicil of the decedent for the purpose of conclusively adjudicating the validity within the state of Georgia of a grant of letters of administration, but that it did not possess the power to conclusively bind all the world as to the fact of domicil, by a mere finding of such fact in a proceeding *in rem*. In other words, proceedings which were substantially *ex parte* cannot be allowed to have greater efficacy than would a solemn contest *inter partes*, which would have estopped only actual parties to such contest as to facts which had been or might have been litigated in such contest.

"Our conclusion being that the adjudication of the fact of domicil in Georgia made in the grant of letters by the De Kalb county court, and which was not made in a contest *inter partes*, was of no probative force upon the question of domicil in a contest in a court of the District of Columbia in the course of proceedings for the administration of assets within said District, it results that the supreme court of the District did not err in excluding the transcript in question whether tendered as evidence conducing to establish or as conclusively fixing the domicil of the deceased. And this conclusion is not affected in the least by the circumstance that on the trial of the issue as to domicil had in the supreme court of the District of Columbia it was claimed that the assets within the District of Columbia at the time of the filing of the caveat by the next of kin had been thereafter, without the sanction of the court, removed from the District of Columbia by one of the caveators."

See also In re Grinnage's Estate, 1938, 69 App.D.C. 370, 101 F.2d 695.

In the present case, obviously a real question exists as to the domicile of the decedent. On the one hand, we have the statement of the decedent; and on the other, we have the action of the decedent in his continuous residence here for many years and other factors indicating domicile here. This court, in Weitknecht v. District of Columbia, 1952, 90 U.S. App.D.C. 291, 294, 195 F.2d 570, 573, held that the question of domicile is one of fact. There the court said:

"To sum up: in determining domicile, actions are far more persuasive than words. See Texas v. Florida, 306 U.S. 398, 425–426, 59 S. Ct. 563, 83 L.Ed. 817. Edwards' actions demonstrate that, whatever the purport of his declarations, his intent to return to his former domicile was not crystallized or

settled. He entertained a great fondness for his boyhood home; he may well have desired to go back there before he died. But such a desire is not enough to avoid payment of tax obligations incurred in the place of actual abode. 'A mere sentimental attachment will not hold the old domicile.' District of Columbia v. Murphy, 314 U.S. 441, at page 456, 62 S.Ct. 303, 86 L.Ed. 329."

It is true that the Weitknecht case involved the matter of taxes allegedly due the District of Columbia but the words of the court are particularly apposite here. Thus a sharp issue is presented which should be determined by the verdict of a jury. If it should be found, at the trial on the issue of domicile, that the domicile of the decedent was, at the time of his death, the District of Columbia, then the Probate Court here would be in position to deny the purported will probate and to grant letters of administration on the estate. If, on the other hand, the decedent is found to have been domiciled in California, then the Probate Court here could deny the petition for letters of administration, and the California fiduciary could then apply to the Probate Court here for ancillary letters testamentary.

The case of Emmert v. Stouffer, 1886, 64 Md. 543, 3 A. 293, 6 A. 177 and § 20–106 of the D.C.Code, both cited by our dissenting brother, have no pertinence to this proceeding. Section 20–106 provides that if administration be granted and a will disposing of the estate shall afterwards be proved according to law, and letters testamentary shall have issued thereon, the same shall be considered a revocation of the letters of administration. This has reference to a situation which happens not infrequently: administration has been granted and later a will is found. This section could not and does not have reference to a case where a will, or a paper writing purporting to be a will, is actually known to be in existence at the time administration is applied for. In this

event the fact of a will or no will must be determined before administration can be granted, and where, as here, no question exists but that the writing was invalid under District of Columbia law, the question may be readily determined by the purported will itself.

In Emmert there was no question of a will invalid on its face because of lack of witnesses; in fact, the will was properly witnessed. The issue was incapacity to make a will. There was testimony as to mental capacity, on behalf of the petitioners who assailed the will, but no opportunity to be heard was afforded those persons interested in maintaining it. The court simply held that as there was no issue—affirmed on one side and denied on the other—its decision was pronounced upon an application purely *ex parte;* that it had no jurisdiction to decide the question of probate under those circumstances; and that the grant of administration would not prevent probate of a will.

Of course, we intimate no view whatsoever on the issue to be determined.

Reversed and remanded for further proceedings not inconsistent herewith.

WILBUR K. MILLER, Circuit Judge (dissenting).

Before giving the reasons for my dissent, I think it desirable if not essential to restate the facts;—generally, for the purpose of placing the case in what I regard as the proper perspective; and particularly, for the purpose of showing only the facts which were actually before the trial judge when the order appealed from was entered. This seems necessary because my brothers of the majority err, I think, in treating certain developments which occurred after the entry of the appealed order as having been before the trial court when the order was entered.

Clarence Edward Tunnell died in the District of Columbia October 29, 1957, seized and possessed of certain realty and a small amount of tangible property situated in California, and certain intangibles located in the District of Co-

lumbia. An unwitnessed holographic will, dated June 20, 1953, was found among his effects and was deposited with the Register of Wills, but has never been offered for probate. The testator recited therein that he "has no known relatives who have ever *indicated any concern, regard for, or devotion to him;* therefore there can be no beneficiaries of this class." [Testator's emphasis.] He then distributed his estate as follows: 65 per cent to the Children's Hospital of Los Angeles as a memorial to his mother; 30 per cent to the Orthopaedic Hospital of Los Angeles; and 5 per cent to Post No. 33, Disabled American Veterans, Glendale, California.

Paragraph 5 of the will is as follows:

"My legal residence is Los Angeles, California, it has been since 1916 and I enlisted there in the United States Army in 1917. It is my expressed instruction that burial not be made in a government cemetary [*sic*] but as outlined in Paragraph No. 4, in Forest Lawn Cemetary, Glendale, Calif. My final instruction is that this Will be probated in Los Angeles, California. Under California law a holographic will is recognized by the Courts. This will requires no Witnesses,— therefore there are none."

An estranged sister of the decedent, Verna Z. Shafer, of Trinidad, Colorado, who was not a beneficiary under the will, filed in the United States District Court for the District of Columbia on November 29, 1957, what she denominated as a "Petition for Letters of Administration." She alleged that her brother, Clarence Edward Tunnell, was a resident of the District of Columbia where he departed this life on October 29, 1957, and that he left what she terms a "paper writing" [1] dated June 20, 1953, which she was advised is not a valid will, "not being witnessed as required by law," and that she "verily believes that said decedent died intestate." She alleged she is the only heir at law and next of kin; that the decedent was seized and possessed of certain realty and personalty in California, certain intangibles in the District of Columbia, and a small amount of tangible property in the possession of the police. She prayed (1) that the holographic will be denied probate and record, and (2) that letters of administration be granted to Richard B. Waldron, her attorney, as she did not desire to act in that capacity.

On December 9, 1957, she filed an amended petition to add to Paragraph 2 of the original the following:

"That from the information available to your petitioner, the decedent moved to the District of Columbia in 1933 and that as far as can be ascertained, he resided in the District of Columbia since about 1933 and maintained a residence at 1424 Massachusetts Avenue, N. W., continuously from 1939 until the date of his death. That decedent was a disabled veteran of World War I and, as far as your petitioner knows, was not employed for a number of years prior to his death."

The Children's Hospital Society of Los Angeles and the Orthopaedic Hospital of Los Angeles filed a joint answer January 27, 1958. They were advised, they said, that the decedent's will was executed wholly in his handwriting, that he was at the time of his death and at the time the will was executed legally domiciled in California, and that the testamentary instrument left by him is a valid holographic will under the laws of that state.

They were further advised, they alleged, that the decedent left as a part of his estate California real estate, "which will in any event require administration in California and that the third beneficiary under said will, Disabled American Veterans of Glendale, California, Post No. 33, is presenting the will for probate at Los Angeles, Cali-

---

[1]. This curious colloquialism is sometimes used by lawyers in the District of Columbia in referring to a written instrument.

fornia." They then recited the will at length, and added the following allegation:

"The said will has not been offered for probate in the District of Columbia and this Court therefore lacks jurisdiction to enter the order sought by petitioner denying probate to the will. If the petitioner desires to contest the validity of the will she will have an opportunity to do so in the California probate proceedings."

With only the petition as amended and the answer thereto before it, together with any additional facts it might judicially have known at that time, the District Court entered on February 24, 1958, the following order:

"This cause having come on to be heard upon the petition of Verna Z. Shafer for an order denying probate to a document on file in the Office of the Register of Wills for the District of Columbia, designated by the above named decedent as his Last Will and Testament, the Court having heard the argument of counsel, and it appearing that no petition for the probate of said document has yet been filed in this Court, and that a petition for probate of the said document has been filed on behalf of one of the beneficiaries named therein in the Superior Court of the State of California in and for the County of Los Angeles.

"It is Hereby Ordered, Adjudged and Decreed That:

"The foregoing petition of Verna Z. Shafer is denied without prejudice to refiling such a petition when and if the aforesaid California Court declines to assume jurisdiction of the aforesaid petition for probate."

On February 24, 1958, and after the entry of the order under scrutiny here, Mrs. Shafer moved for a rehearing and to have the issue of domicile tried by a jury. With this motion pending and undetermined, she filed on April 15, 1958, a notice of appeal from the order of February 24, 1958. On the next day, April 16, 1958, the District Court denied the motion for rehearing.

The majority say, "Appellant filed a motion for rehearing, asking that the court frame an issue on the question of domicile, to be tried by a jury in the District Court. This motion for rehearing was overruled and this appeal followed." The chronology I have shown above demonstrates that the foregoing quotation from the majority opinion is an inaccurate statement. The fact is that the appeal preceded the denial of the motion for rehearing and to frame an issue.

The majority hold the trial judge erred in denying the motion. They say:

"On the merits we think the court should have framed an issue on the question of domicile and should have set the case for hearing before a jury. Accordingly, the order of the District Court must be reversed and the cause remanded for that purpose."

That is to say, the holding of the majority opinion is that, on a motion made after the entry of judgment, the court itself should have framed an issue as to domicile when the only reference to that subject in the pleadings [2] was the answer's uncontroverted allegation that domicile was in California. The judgment of February 24, 1958, is being reversed because on April 16, 1958, (after this appeal had been noted) the District Judge denied the motion to frame an issue. I cannot agree to this result. I think this appeal should be dismissed as prematurely taken. If the appeal is entertained, I am quite clear that the judgment should be affirmed. These points will be discussed in order.

This appeal should be dismissed because the judgment of February 24, 1958, was not a final, appealable order on April 15, 1958, when the notice of appeal was filed. This is so for two reasons:

---

2. No proof was introduced.

1. A judgment is suspended pending motion for rehearing and is not final for the purposes of appeal until the motion for rehearing has been denied. Mr. Chief Justice Fuller made this plain in Kingman & Co. v. Western Mfg. Co., 1898, 170 U.S. 675, 680, 18 S.Ct. 786, 788, 42 L.Ed. 1192, when he wrote:

> "The question before us is merely whether a judgment is final so that the jurisdiction of the appellate court may be invoked while it is still under the control of the trial court through the pendency of a motion for new trial. We do not think it is * * *."

To the same effect are these cases: Brockett v. Brockett, 1844, 2 How. 238, 43 U.S. 238, 11 L.Ed. 251; In re Slaughter-house Cases, 1869, 10 Wall. 273, 77 U.S. 273, 19 L.Ed. 915; Leishman v. Associated Wholesale Elec. Co., 1943, 318 U.S. 203, 63 S.Ct. 543, 87 L.Ed. 714; United States v. Crescent Amusement Co., 1944, 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160; Andrews v. Thum, 1 Cir., 1896, 72 F. 290; Larkin Packer Co. v. Hinderliter Tool Co., 10 Cir., 1932, 60 F. 2d 491; Southland Industries v. Federal Communications Comm., 1938, 69 App. D.C. 82, 99 F.2d 117; Healy v. Pennsylvania R. Co., 3 Cir., 1950, 181 F.2d 934; Napier v. Delaware L. & W. R. Co., 2 Cir., 1955, 223 F.2d 28; Schenley v. Kauth, 1953, 160 Ohio St. 109, 113 N.E. 2d 625.

As has been pointed out, the judgment here involved was entered February 24, 1958, and on that same day the appellant filed a motion for rehearing with respect to it. On April 15, 1958, the appellant filed a notice of appeal from the judgment of February 24, 1958; but on April 15 the previously filed motion for rehearing had not been passed on and was pending. Under the rule just stated, the judgment of February 24, 1958, was not final on April 15 for purposes of appeal and so this appeal should be dismissed.

It is true that on April 16, 1958, the District Court denied the motion for rehearing. But its action in so doing did not validate the notice of appeal of previous day from a judgment not then appealable. No subsequent action can give life and vigor to an appeal which was invalid at the time it was taken and which therefore did not confer jurisdiction on the appellate court. United States v. Crescent Amusement Co., supra; Larkin Packer Co. v. Hinderliter, supra; Southland Industries v. Federal Communications Comm. supra; Vincent v. Vincent, D.C.Sup.Ct., 1884, 3 Mackey 320, 14 D.C. 320.

The Southland Industries opinion held that a notice of appeal filed while a petition for reconsideration was pending did not give this court jurisdiction. It added [69 App.D.C. 82, 99 F.2d 121.]: "Appellant seeks further to support its position by urging that at the time the record on appeal was filed in this court the petition for rehearing was not then pending. However, it was the fact that the petition was pending when the appeal was taken which prevented this court from acquiring jurisdiction." The Southland Industries opinion carefully and correctly distingishes Luckenbach Steamship Co. v. United States, 1926, 272 U.S. 533, 47 S.Ct. 186, 71 L.Ed. 394.

I observe that in the later case of Hamilton v. United States, 1944, 78 U. S.App.D.C. 316, 140 F.2d 679, this court nevertheless followed the Luckenbach case, attempted to distinguish the Southland Industries decision, and held that a notice of appeal, though prematurely filed while a motion for a new trial is pending, is not a nullity and that this court may hear the appeal, once the motion has been overruled by the trial court.

I think the Hamilton case was incorrectly decided; and certainly it was overcome by the Supreme Court in United States v. Crescent Amusement Co., supra, decided later in 1944. In the Crescent Amusement case there were two appeals, Nos. 17 and 18. The court said, 323 U.S. at pages 177–178, 65 S.Ct. at page 256,

> "Before we come to the merits there is a preliminary question as to

whether the appeal of the United States in No. 17 is premature. The District Court entered a final judgment in this case on May 17, 1943. On the sixtieth day after judgment there were motions pending to amend the findings. On that day the appeal was applied for and allowed. On August 30, 1943, the court ruled on the motions to amend its findings. Within sixty days thereafter the United States applied for the appeal in No. 18 and it was allowed. The appeal in No. 17 was filed here at the same time as that in No. 18. The appellees move to dismiss No. 17 on the ground that it was premature and to dismiss No. 18 on the ground that the District Court by allowing the first appeal lost jurisdiction of the cause and was without power to allow a further appeal. We think the motion to dismiss the appeal in No. 17 must be granted and the motion to dismiss the appeal in No. 18 denied.

"The motion to amend the findings tolled the time to appeal if it was not addressed to 'mere matters of form but raised questions of substance,' e. g., if it sought a 'reconsideration of certain basic findings of fact and the alteration of the conclusions of the court.' Leishman v. Associated Wholesale Electric Co., 318 U.S. 203, 205 [63 S.Ct. 543, 544, 87 L.Ed. 714.] An examination of the motion makes plain that matters of substance were raised. The appeal in No. 17 was accordingly premature. Zimmern v. United States, 298 U.S. 167 [56 S.Ct. 706, 80 L. Ed. 1118.] But it does not follow that the District Court had no jurisdiction to allow the appeal in No. 18. An appeal can hardly be premature (and therefore a nullity) here and yet not premature (and therefore binding) below. * * *"

Ineffectually, the majority endeavor to escape from the fact that the pendency of the motion for rehearing made the judgment interlocutory and the attempt to appeal abortive. They do so by suggesting that the motion for rehearing was not pending when the notice of appeal was filed; that, after all, the trial judge had really ruled on the motion before the appeal was noted, although his order shows the contrary.

This suggestion is implicit in the majority opinion, where it first notes that a memorandum on the District Court file cover recites that the motion for rehearing was denied March 17, 1958, [3] and then adds:

"We do not know whether appellant treated the motion for rehearing as denied on March 17, 1958, the date of the minute entry, or whether the formal order of denial was handed to the judge on April 15 and not entered until the 16th. * * *"

If the appellant treated the motion for rehearing as denied March 17, 1958, she was wrong in doing so, for the order of denial was not entered until April 16. And it is immaterial whether the formal order of denial was handed to the judge on April 15 (which does not appear from the record), for it is indisputable that it was not entered until April 16.

The novel notion that an unsigned memorandum on a file cover, presumably placed there by a court attaché, can prevail over a formal order deserves detailed discussion. It is a general principle that a court of record speaks only by its orders, duly entered in its records. Schmidt v. Esquire, Inc., 7 Cir., 1954, 210 F.2d 908, 914, certiorari denied Schmidt v. Crow-Collier Pub. Co., 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646; Schenley v. Kauth, supra; Sneed v. Mayo, Fla.1953, 66 So.2d 865, 870; Shipping Room Suppliers v. Schoenlaub,

---

3. There are three unsigned penned notations on the District Court file cover, which purport to show some of the steps taken in this case. One of them, dated

March 17, 1958, does indeed recite that a motion for rehearing and to have the issue of domicile tried by a jury was denied.

1952, 157 Ohio St. 498, 106 N.E.2d 75; Powers v. Trent, 1946, 129 W.Va. 427, 40 S.E.2d 837. No matter what the judge may say on an earlier day, or what a clerical employee notes as his understanding of what the judge then said, the court acts officially and effectively only if and when the order itself is finally entered.

This principle of law, long established by the courts, is expressed in Rule 58 of the Federal Rules of Civil Procedure, which provides as follows: "The notation of a judgment in the civil docket as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry." It is also embodied in Rule 73(a), where it is provided that the time for taking an appeal commences to run from the entry of an order denying a motion for rehearing or a new trial. The word "entry" means entry in the court's docket; and until an order denying a motion for rehearing or new trial is actually entered in the trial court's docket, the judgment to which the motion was addressed is not final for the purposes of appeal. Cf. Napier v. Delaware L. & W. R. Co., supra; Healy v. Pennsylvania R. Co., supra; Schenley v. Kauth, supra.

The majority, in closing their discussion of my suggestion that the appeal did not lie because it was noted before the judgment became final, state as follows:

> " * * * But in any event it is clear that, since the motion for rehearing tolled the time for appealing the order of February 24, 1958, the present appeal from that order may be said to be within time. * * * "

But no question of limitation is raised here. I have not suggested the appeal was noted too late, but rather that it was noted too early—at a time when, due to the pendency of appellant's motion for rehearing, the judgment of February 24, 1958, had not become final for the purposes of appeal.

2. The appeal should be dismissed for the further reason that the order of February 24, 1958, was not final and appealable because it adjudicated only one of two separate claims for relief, and the court did not make an express determination that there was no just reason for delay, and did not expressly direct the entry of judgment—a determination and direction which, under Rule 54(b) of the Federal Rules of Civil Procedure, are conditions precedent to the entry of a final judgment on less than all the claims presented.

The applicability of Rule 54(b) depends in the first instance on whether the petition set up more than one claim for relief. It will be noted that petitioner prayed for letters of administration as though the decedent were intestate, and also prayed that the will, which had been lodged with the Register of Wills but had not been offered for probate, be denied probate and record. I think the petitioner thus asserted two claims for relief. If that be true, unquestionably the order of February 24, 1958, was not appealable, as the District Court did not "determine and direct" as required by Rule 54(b).

Without passing on or even mentioning the claim for letters of administration, the court dismissed the petition without prejudice insofar as it sought denial of probate. This was done on the ground that the testamentary paper had not been offered for probate, and that there was pending in California a probate proceeding which might result in a finding of testacy. That the court deliberately omitted from its judgment of February 24, 1958, any reference to the claim for letters of administration is shown by the fact that the order begins with the words "This cause having come on to be heard upon the petition of Verna Z. Shafer for an order denying probate * * *." No reference whatever was made to the prayer that letters of administration be granted, and the cause did not "come on to be heard" on that claim for relief.

In opposition to the foregoing, it is said that, because the order closes with the words "The foregoing petition of Verna Z. Shafer is denied * * *," the court disposed of the entire petition and any and all claims contained in it. But the use of the limiting word "foregoing" shows that the District Court had in mind only Mrs. Shafer's prayer for an order denying probate, as previously recited in the order, and not her petition in its entirety. The order is silent, as said before, as to that portion of the petition which sought letters of administration.

In considering whether Mrs. Shafer's two specific prayers for relief constituted two separate claims for relief, it is important to note exactly what her prayers were. She sought letters of administration, and that the unoffered will be denied probate. It should be remembered that *denial* was all she asked with respect to probate. That, then, is the nature of the claim which is to be compared with the prayer for letters of administration, to see if the claims are so intertwined as to constitute only one *claim*.

I suppose the question whether the two claims for relief are separate or identical depends on whether adjudication of one would control the adjudication of the other. Are the claims for relief so related and interdependent that to grant one is to grant the other, or that to deny one is to deny the other? If so, they really constitute one claim. If not, they are two separate claims. The claim for letters of administration did not depend on the disposition of the claim for negative relief as to probate. Such letters could be granted or denied, regardless of whether denial of probate were ordered or refused. Denial of probate would of course tend to show intestacy, but *would not conclusively* establish it,—with the result that letters of

administration could nevertheless be granted or denied. Refusal to deny probate not being tantamount to admitting the will to probate,[4] would not dictate the disposition of the claim for letters of administration.

In like manner, granting or refusing the claim for letters of administration would not determine the question whether denial of admission to probate should be granted or refused.

The court could, and did, dismiss the petition for denial of probate because the will had not been offered for probate, but that ground for dismissal would not apply concerning letters of administration. Such letters could be granted or denied regardless of whether the will had been offered for probate.

The court could have granted letters of administration without denying probate to the will since that instrument, though not offered, could have been introduced in evidence to show its formal invalidity and the decedent's consequent intestacy, without reaching and deciding the question whether it should be denied probate. For, where a decedent left a will alleged by a petitioner for letters of administration to be invalid, a finding of intestacy, made in the course of the proceeding as a prerequisite to the grant of such letters, is not res judicata on a subsequent proceeding for the probate of that will. An application for letters of administration under § 20–201, D.C. Code (1951), initiates a purely ex parte proceeding, and, consequently, a finding made therein cannot be binding in an adversary proceeding for probate begun under § 19–301, D.C.Code (1951). Emmert v. Stouffer, 1886, 64 Md. 543, 3 A. 293, 6 A. 177. If in the latter proceeding the will is adjudged valid and is admitted to probate, the letters of administration previously issued are revoked. § 20–106, D.C.Code (1951).

4. It should be borne in mind that the court's refusal, for any reason, to deny probate is not equivalent to granting probate and thus in effect barring letters of administration. Declining to deny probate simply left the unoffered will as it was before, and does not control or affect the court's ruling on the petition for letters of administration.

I think there were two claims and that the District Court ruled on only one of them without making the determination or giving the direction which Rule 54(b) required if the order is to be final; and that therefore its order was not appealable, and that this case should be dismissed for that reason.

If I am wrong in thinking this appeal should be dismissed, then my view is that the District Court was correct in dismissing the petition. It is fatally defective because it does not allege that the testator was domiciled in the District of Columbia.

The validity of a will with respect to personalty is governed by the law of the place in which the testator was domiciled at the time of death. Restatement, Conflict of Laws § 306 (1934); Lee v. Monks, 1945, 318 Mass. 513, 62 N.E.2d 657. It follows that the District Court could grant the relief sought by the petitioner only if the decedent died domiciled in the District of Columbia or another place where a holographic will is invalid; and it further follows that the petition, which did not allege that fact, was defective and should have been dismissed as not stating a claim upon which relief could be granted.

Instead of alleging the testator was domiciled in the District of Columbia, apparently Mrs. Shafer studiously avoided making such an allegation. She was content to allege her brother was "a resident of the District of Columbia" and "That from the information available to your petitioner, the decedent moved to the District of Columbia in 1933 and that as far as can be ascertained, he resided in the District of Columbia since about 1933 and maintained a residence at 1424 Massachusetts Avenue, N.W., continuously from 1939 until the date of his death."

So far I have addressed myself only to the proposition that, standing alone, the petition failed to state a claim upon which relief could be granted because it lacked the essential averment that the decedent was domiciled in the District of Columbia.

The answer filed by the two hospitals alleged "that the decedent was at the time of his death and at the time the will was executed legally domiciled in the State of California." The allegation was not denied, but my brothers of the majority say it "raised an issue which should have been tried before a jury," and that "The issue of domicile was thus raised in the answer of the appellees."

Thus the majority opinion seems to hold that the answer's uncontroverted allegation of domicile in California somehow supplies the lack of an averment in the petition that domicile was in the District of Columbia,—an allegation essential to the statement of a claim upon which relief could be granted. I find it impossible to agree. In my view, an undenied allegation in the answer that domicile was in California falls far short of adding to the petition the necessary, but absent, allegation that domicile was in the District; neither does it tender an issue as to where domicile was.

An "issue" is a statement of material fact in the pleading of one party which is denied in the pleading of the other party. I do not understand that an issue is formed by the pleadings merely because a material fact is affirmed by one party, when it is not denied by the other.

Assuming the truth of the allegations of both petition and answer, they are not inconsistent and no issue as to domicile was tendered by Mrs. Shafer. It is well established that the words "domicile" and "residence" are not synonymous and have distinct legal meanings.

One's domicile is the "place with which a person has a settled connection for certain legal purposes, either because his home is there, or because that place is assigned to him by the law." Restatement, Conflict of Laws § 9 (1934); Beale, Conflict of Laws § 9.1 (1935). In order to establish a domicile at a given place, one must reside there with the intent of making it his permanent home; but once such domicile is established, continued residence at that place is not necessary to retain it. One's residence

may or may not be at his domicile; he may have more than one residence at a given time, but never more than one domicile. It is also true that once a place has become one's domicile, it remains such until he has established another. Mitchell v. United States, 1875, 21 Wall. 350, 88 U.S. 350, 22 L.Ed. 584. Residence may be evidence of domicile, but is not determinative of it.

It is true that courts have construed the word "residence" as used in certain statutes to mean "domicile" because of the apparent legislative intent that it be done. See, for example, Shenton v. Abbott, 1940, 178 Md. 526, 15 A.2d 906; In re Glassford's Estate, 1952, 114 Cal. App.2d 181, 249 P.2d 908, 34 A.L.R.2d 1259. But in construing pleadings, the words "residence" and "domicile" are confined to their strict legal meanings and are clearly differentiated.

This distinction between interpretation of a statute, where "residence" will be held to mean "domicile" if it appears the legislature so intended, and the construction of a pleading, where "residence" and "domicile" are distinguished and held not to be synonymous, is well illustrated by Avery v. Bower, 1930, 170 Ga. 202, 152 S.E. 239.

In that case a petitioner sought by *quo warranto* to oust Bower from the office of county school superintendent. It appeared that under the Georgia Code only a person qualified to vote for county school superintendent could hold that office, and that a voter "residing" within the limits of an independent school district was ineligible to vote in the election. The petition alleged (1) that Bower was then a bona fide resident of an independent school district within the county and had been residing therein for several years; (2) that Bower was then

domiciled in the independent school district; and (3) that being ineligible to vote in the election of a county school superintendent he was ineligible to hold that office.

On appeal from an order sustaining a demurrer to and dismissing the petition, the court held that the word "residence" in the statute must be construed to mean "domicile" and that therefore the statute permitted one to vote only in the place in which he was domiciled. But, in examining the pleadings, the court noted that "residence" and "domicile" are not synonymous terms, and held the allegation that Bower was then a resident of the independent school district was insufficient to allege his qualification to vote there, but that the later allegation of domicile therein was sufficient. The averment of residence did not state a cause of action, but the allegation of domicile, admitted by the demurrer, was sufficient to establish Bower's ineligibility for the office he held.

In passing upon the sufficiency of averments in petitions seeking the removal of causes from state to federal courts on the ground of diversity of citizenship, the federal courts have repeatedly held that, whereas "domicile" and "citizenship" (in a state) are substantially synonymous, an allegation of residence in a state is not an averment of citizenship therein. Robertson v. Cease, 1878, 7 Otto 646, 97 U.S. 646, 24 L.Ed. 1057; Continental Life Ins. Co. v. Rhoads, 1886, 119 U.S. 237, 7 S.Ct. 193, 30 L.Ed. 380; Everhart v. Huntsville Female College, 1887, 120 U.S. 223, 7 S.Ct. 555, 30 L.Ed. 623; Denny v. Pironi, 1891, 141 U.S. 121, 11 S.Ct. 966, 35 L.Ed. 657.[5] "Citizenship depends upon domicile, and, as domicile and residence are two different things, it follows that citizenship is not deter-

5. In Kern v. Standard Oil Co., 8 Cir., 228 F.2d 699, supplemented 8 Cir., 1956, 230 F.2d 954, there is dictum that the allegation in a complaint by a Minnesota citizen that one of the two defendants was then resident in Minnesota, taken as true, established Minnesota citizenship under the 14th Amendment. This dictum is contrary to the Supreme Court cases cited in the text. It is dictum because it was not the allegation of residence in Minnesota that defeated jurisdiction, but failure to affirmatively allege that defendant's citizenship in a state other than Minnesota which required dismissal of the complaint.

mined by residence." Delaware, L. & W. R. Co. v. Petrowsky, 2 Cir., 1918, 250 F. 554; Collins v. City of Ashland, D.C. E.D.Ky.1901, 112 F. 175, 177. This is so despite the provision of the 14th Amendment to the Constitution that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." The word "reside" in that provision is construed to mean "domicile." See Robertson v. Cease, supra; Collins v. City of Ashland, supra; Harding v. Standard Oil Co., D.C.N.D.Ill.1910, 182 F. 421, 423; Valentine v. Powers, D.C. Neb.1948, 85 F.Supp. 732.

It may be argued that a man's residence is presumed to be his domicile and that, because of the presumption, Mrs. Shafer's allegation that her brother lived in the District was a sufficient allegation of domicile. But any presumption that the place of residence is the domicile may be rebutted. The rule is that pleading a fact (that is, residence) from which flows a rebuttable presumption of another fact (that is, domicile) is not a sufficient averment of the latter fact. Turner v. Hamlin, 1913, 152 Ky. 469, 153 S.W. 778, 779; Prudential Ins. Co. v. Moore, 1925, 197 Ind. 50, 149 N.E. 718, 722; Brane v. First Nat. Bank, 1933, 137 Kan. 403, 20 P.2d 506, 507.

It is quite clear, I think, that the holographic will was not before the District Court for admission to or denial of probate. Nobody had offered it for probate; there was no proponent. It is said in Emmert v. Stouffer, 1885, 64 Md. 543, 553, 3 A. 293, 295, 6 A. 177: "But the Orphans' Court has no jurisdiction to determine the question of probate, until the will is exhibited for the purpose of having it proved." I find nothing in the District's cumbersome and somewhat antiquated statutes on the subject to indicate that the District Court may deny probate to an instrument which has not

been offered by anybody.[6] The majority say "appellant had asked, in accordance with the practice prevailing in the Probate Court, that * * * the writing be denied probate." Although such practice may prevail in our Probate Court, it has not attained the status of a custom and is in my judgment unwarranted.

So, when the District Court dismissed Mrs. Shafer's petition that probate be denied, it acted correctly for two reasons: (a) the instrument had not been offered for probate; and (b) the petition lacked the essential averment that the testator was a domiciliary of the District.

There was no need to qualify the dismissal by adding that it was without prejudice; for, without such qualification, Mrs. Shafer will have the right to oppose either an original petition to probate, or an application for ancillary letters testamentary by a California administrator *cum testamento annexo*, should either be filed hereafter. And, if it be thought the District Court has denied her petition for letters of administration, she may file a new petition for that relief, which will be granted if she alleges and proves the decedent was domiciled in the District and therefore was intestate.

The majority rely on Overby v. Gordon, 1900, 177 U.S. 214, 20 S.Ct. 603, 44 L.Ed. 741 and discuss it at some length. Suffice it to say that in the Overby case the will was offered for probate, while here there was no such offer. Weitknecht v. District of Columbia, 1952, 90 U.S.App.D.C. 291, 195 F.2d 570, also cited and relied upon in the majority opinion, was a decision in a tax case which held the decedent's unrealized desire to return to his boyhood home before he died was not enough "to avoid payment of tax obligations incurred in the place of actual abode." I do not believe the Weitknecht case is authority for the proposition that the decedent here

---

6. Section 19–301, D.C.Code (1951), which establishes probate procedure, begins thus: "Upon the filing of a petition for probate of a will, notice * * *

shall be issued * * *." There is no provision for filing a petition to deny probate of a will which has not been offered.

forfeited his domicile in California because he died in the District without returning home after the execution of his will.

For these reasons, I disagree with the majority.